UNITED STATES of America ex rel. Fred STURDIVANT, Relator,

v.

STATE OF NEW JERSEY and The Principal Keeper of The State Prison at Trenton, New Jersey, Respondents.

Civ. A. No. 814–60.

United States District Court
D. New Jersey.

Nov. 1, 1960.

Thomas E. Durkin, Jr., Newark, N. J., for petitioner.

Brendan T. Byrne, Newark, N. J., for respondents.

MEANEY, District Judge.

After having exhausted the remedies available to him in the courts of the State of New Jersey and the Supreme Court of the United States having denied writ of certiorari, the petitioner herein has made an application for a writ of habeas corpus in the District Court of the United States for the District of New Jersey.

The petitioner was convicted on a charge of the sodomy-murder of his 4½ year old stepdaughter, in the County Court of Essex County, New Jersey. Since the verdict was one of guilty of murder in the first degree, without a recommendation for a sentence of life imprisonment, the sentence of death was compulsory, and was imposed.

Notice of appeal was filed in due time and ultimately the New Jersey Supreme Court, with one justice dissenting, affirmed the judgment entered. State v. Sturdivant, 1959, 31 N.J. 165, 155 A.2d 771. Thereafter, as indicated above, a writ of certiorari was denied by the Supreme Court, 362 U.S. 956, 80 S.Ct. 873, 4 L.Ed.2d 873.

The instant application is based on an alleged violation of the constitutional right of the petitioner to a trial by an impartial jury.

The sequence of facts upon which this claim rests is substantially as follows:

On June 17, 1958, the State of New Jersey moved the trial of an indictment charging the petitioner herein, Fred Sturdivant, with causing the death of Toni Yvonne Ragin while perpetrating or attempting to perpetrate sodomy and/or rape. The court directed the impaneling of a jury of 14 as was its right. Examination of the jury on *voir dire* be-gan on June 17, 1958, and continued on the following day. On June 18th, the second day of examination, the special panel of jurors was exhausted and in accordance with provisions of N.J.S. 2A:-74–10, the general panel was called, and the examination on *voir dire* was continued with the members of the general panel. On the afternoon of June 19th the list of jurors on the general panel was exhausted when only 13 of the 14 jurors to be sworn were sworn. Thereupon the judge presiding at the trial in accordance with the provisions of the New Jersey statute, counsel for the State and counsel for the defense consenting, entered an order to the sheriff to "return a *tales de circumstantibus* forthwith." The 14th juror was chosen from among those who appeared as a result of the sheriff's efforts.

It is precisely with the nature of the sheriff's efforts that the question before this court arises. It would appear that on receipt of the court order a properly designated under-sheriff requested, by telephone, eight large commercial companies, including the New Jersey Bell Telephone Company, to send employees to the sheriff's office. The telephone calls produced about 35 persons, 18 of whom were employees of the Telephone Company. On the day of the issuance of the order *tales de circumstantibus*, four men came from the Telephone Company, two of whom reported to the sheriff's office. The two were taken to the court room where both were put on their *voir dire*, and neither was accepted. The other two, Mr. Watkins and Mr. Cotton, had gone directly to the court room where they gave their names to the clerk, and later were found by the under-sheriff. Both of them were named in the formal return to the court's order, and counsel for the defense knew they were talesmen, though it would appear that at the time he knew nothing of the method of their summoning. Of these two, one was accepted as the 14th juror. Ultimately, as is the statutory practice in New Jersey, the names of the 14 jurors were placed in a box at the end of the trial and the

conclusion of the court's charge, and the names of 12 were drawn to determine the issues. This latter function was performed by the clerk of the court in the presence of the court. It so happened that the name of juror No. 14 was drawn so that he became juror No. 12 in the final make-up of the jury.

Subsequent examination of the under-sheriff after the validity of the method of carrying out the order *tales de circumstantibus* was questioned developed that in his telephone call to the Telephone Company he informed a vice-president of the Telephone Company of the court order and asked if he could send 8 or 10 people who might be considered for jury duty. When asked the nature of the case, he answered that it was a murder trial.

Petitioner on the foregoing facts asks that a writ of habeas corpus be granted on the ground that the method used in carrying out the order *tales de circumstantibus* constituted a violation of the right of the defendant to trial by an impartial jury. While conceding the constitutionality of the New Jersey statute providing for the selection of jurors, he urges that the statute itself was violated so outrageously as to effect a substantial denial of his guaranteed right.

The history of the selection of jury lists is a story of continual efforts to guard against evil and devious methods of securing controlled jurors. Advance preparation of lists representing a fair cross section of qualified jurors, establishment of statutory qualifications, drawing by lot and a limited right of peremptory challenge with an unlimited right of challenge for cause—these are all means devised for the obtaining of assurance of unbiased jurors for trials.

New Jersey provides in its statute law the course to be followed in the make-up of panels from which jurors are to be chosen. The pertinent statute involved in the case at bar is N.J.S. 2A:74–10, which reads as follows:

"Talesmen for special panel of trial jurors for trial of criminal causes

"When the special panel or list of jurors served on a defendant in any criminal case in which he shall be entitled to 20 peremptory challenges shall, from any cause, be exhausted before a jury for the trial of the indictment shall be obtained, talesmen shall be taken from the general panel of jurors returned during the stated session at which the defendant is to be tried, if any remain.

"If more talesmen are required than the number of jurors remaining on the general panel, the sheriff or other proper officer shall forthwith summon, from among the bystanders or others, such additional number of persons qualified to serve as jurors as may be ordered by the court, and make return thereof immediately, and place the names of the jurors so returned in the box and draw therefrom until the jury is completed. If the first order for talesmen shall prove insufficient, other and further orders may be made until the necessary number of jurors shall be obtained.

"The defendant shall not be entitled to a service of the list of talesmen taken from the general panel after the special panel is exhausted, nor of the talesmen summoned by order of the court, unless the court shall specially so direct, in which case the court shall fix the length of time the list of talesmen shall be so served, before the drawing of the jurors shall proceed."

Petitioner contends that the under-sheriff by his actions failed to perform his duty in accordance with the requirements of the cited statute and that he unlawfully delegated his duties to unauthorized persons. Concededly the safeguards that surround the preparation of special and general panels of prospective jurors cannot be used in carrying out an order *tales de circumstantibus*. Only the basic restrictions surrounding the selection of jurors may be preserved in the very nature of the operation. For instance, volunteers, eager or otherwise,

are suspect. Persons of bias, known to the sheriff, are ineligible. Patent disabilities are as much as pressure of time and circumstance will permit to be considered. Of course on request of counsel or in the existence of conditions which seem suspect to the court, adjournment may be had for service of the *tales*. Neither of these situations obtained at the time of the presentation of the *tales*, counsel for the defense tacitly acceding to the procedures at that time by partaking of the examination of the prospective jurors.

Was there then denial of the right to a fair and impartial jury in the premises? The answer to that question depends, as the New Jersey Supreme Court said, on "whether the under-sheriff departed from any principle, judicial or legislative, and if he did, whether that departure invalidates the conviction upon the showing described above." 31 N.J. at page 171, 155 A.2d at page 774. N.J.S. 2A:74–10, places upon the sheriff the duty of summoning from among the bystanders or others such additional number of persons qualified as jurors as may be ordered by the court. Other than this directive nothing is said as to how or from what sources he shall procure the jurors. These are matters within his discretion. In the present case there appeared no obvious disqualification of the accepted talesmen, nor did any appear on their *voir dire*. In the final analysis the basis of the petitioner's claim to violation of his rights rests on an alleged delegation of his duty by the under-sheriff to a stranger to his office.

In a well considered opinion by Chief Justice Weintraub, the New Jersey Supreme Court held that while the method pursued by the under-sheriff might have been unwise or irregular, it could not be construed as a delegation of authority. In telephoning to the various companies, requesting that persons be sent for jury duty, the under-sheriff did not authorize final selection by the recipients of the telephone call. They were requested to send people who might be considered for jury duty. The right to accept or reject

them was never surrendered by the under-sheriff. At most by this means he secured the attendance of the possible jurors who became bystanders by their presence. And further, that his possibilities were not limited to bystanders as such at the time of issuance of the judge's order is indicated by the language of the statute referring to "bystanders or others." N.J.S. 2A:74–10.

The learned dissenting justice found difficulty in the fact that the sheriff was directed to "summon" prospective jurors, inferring that in the context the use of the word "summon" imported compulsion. That would certainly be true of bystanders. But summon has another signification, namely, notify. And notification need not of necessity be personal. However, when in response to notice, persons other than bystanders appear in court, they then become bystanders and any further call of the sheriff becomes then an effective command. This double significance of the word seems implied by the use of the words "bystanders or others." But whether or no, the fact is that when they appeared the persons notified became bystanders and as such, in the absence of disqualifying elements, subject to call as jurors.

In considering the application of the statute which prescribes the method of drawing juries, it may be well to keep in mind a comment of Justice Harlan, in the case of Hoag v. State of New Jersey, 1958, 356 U.S. 464, 468, 78 S.Ct. 829, 833, 2 L.Ed.2d 913, where he said "For it has long been recognized as the very essence of our federalism that the States should have the widest latitude in the administration of their own systems of criminal justice." He further quotes from Brock v. State of North Carolina, 1953, 344 U.S. 424, 427–428, 73 S.Ct. 349, 351, 97 L.Ed. 456, as follows: "The pattern of due process is picked out in the facts and circumstances of each case."

It is the conviction of this court, further, that we must be concerned more with substance than technique, with realities rather than flimsy figments. We must indeed have deep concern about the

rights of all men, of whatever state or condition, and be fiercely jealous of such rights. But our concern must be realistic and not based on impractical niceties.

As no evidence of fraud, collusion or impropriety developed in the hearing concerning the presence of the disputed *tales*, and none is alleged other than the method of their procurement, it seems to this court that there was no denial of the right of petitioner to a fair and impartial jury, and the petition is dismissed.

Let an order be submitted.