UNITED STATES of America,
Appellee,

v.

Norman Rowe McCONNEY, Defendant-
Appellant.

No. 308, Docket 28599.

United States Court of Appeals
Second Circuit.

Argued Jan. 29, 1964.

Decided March 23, 1964.

James W. Dolan, Asst. U. S. Atty. (Justin J. Mahoney, U. S. Atty., for Northern Dist. of New York, on the brief), for appellee.

Morris Zuckman, Albany, N. Y., for defendant-appellant.

Before LUMBARD, Chief Judge, and WATERMAN and MARSHALL, Circuit Judges.

MARSHALL, Circuit Judge.

Appellant was indicted, tried by jury, found guilty and sentenced for violation of the Mann Act, 18 U.S.C. § 2421. The indictment charged: "That on or about June 22, 1961, at Albany, in the State and Northern District of New York, Norman Rowe McConney, the above-named defendant, did knowingly transport in interstate commerce from Albany, New York to Bridgeport, Connecticut, Ernestine Mitchell McConney, for the purpose of prostitution."

The first government witness, Gretchen Ferguson, stated that during the year 1961 she maintained "a house of ill fame" in Bridgeport, Connecticut which was used by one or two prostitutes at a time. She testified that on or about June 20, 1961, she received a telephone call from Ernestine McConney, but had no recollection of what was discussed, except that Ernestine had said that she wanted to come to Bridgeport. There was no evidence of where the call came from. Some days later Ernestine McConney showed up at the Ferguson's house at about one o'clock in the morning in a car driven by appellant, and bearing New York license plates. After approximately an hour appellant left in the same car.

Both Mrs. Ferguson and her husband testified that Ernestine McConney remained in the house from ten days to two weeks during which time she engaged in the business of prostitution, paying Mrs. Ferguson two dollars for each male visitor. There was also testimony that appellant visited Bridgeport on July 4th or 5th and accompanied his wife to the house of Mrs. Ferguson's mother in Stratford, Connecticut to attend a barbecue party. He spent the night with his wife in the house in Bridgeport and left the next day. He returned a few days later to pick up his wife and they both left Bridgeport. Ernestine McConney, called as a witness by the government, testified that she was the wife of appellant, that the two of them resided in Albany, New York, that she owned a Cadillac automobile registered in New York but that she did not drive a car and did not have an operator's license. An F. B. I. agent testified that appellant, after being advised of his rights, had made a statement to him denying that he had transported his wife from Albany to Bridgeport for any purpose, and that he knew Gretchen Ferguson or that he had been in Bridgeport during the past twenty years.

At the close of the government's case appellant moved unsuccessfully to dismiss the indictment for failure of proof. Appellant called only one witness, an F. B. I. agent, for questioning concerning statements made to him by the Fergusons. Both sides rested and appellant renewed his motion. After considerable discussion in chambers, Judge Foley recognized the apparent deficiency of proof of the corpus delicti—the trip from Albany to Bridgeport on the date in question for the purpose charged—but was of the opinion that the false statements to the F. B. I. agent were sufficient to submit the case to the jury. We disagree.

It is not disputed that the "victim" voluntarily engaged fully in the business of prostitution at the Ferguson's establishment. This was the sole concern of the State of Connecticut. Conn. Gen.Stat. § 53–226 (1958). Mrs. Ferguson freely admitted that she was running "a house of ill fame." This also was an admitted violation of the laws of Connecticut. Conn.Gen.Stat. § 53–230 (1958). The framers of the Mann Act intended to leave these problems to the states. H.Rep.No.47, 61st Cong., 2nd Sess., 1–2, 9–11, S.Rep.No.886, 61st Cong., 2nd Sess., 11.

■ In order to constitute a federal offense there must be a showing that the defendant procured or induced the transportation of the female in interstate transportation with the intent of

thereby effecting or achieving illicit personal relations or the other purposes prohibited by the statute:

■■ "The penalties of Section 2 of the Act are directed at those who knowingly transport in interstate commerce 'any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose, or with the intent and purpose to induce, entice, or compel such woman or girl to become a prostitute or to give herself up to debauchery, or to engage in any other immoral practice.' The statute thus aims to penalize only those who use interstate commerce with a view toward accomplishing the unlawful purposes. To constitute a violation of the Act, it is essential that the interstate transportation have for its object or be the means of effecting or facilitating the proscribed activities. Hansen v. Haff, 291 U.S. 559, 563, 54 S.Ct. 494, 495, 78 L.Ed. 968 [971]. An intention that the women or girls shall engage in the conduct outlawed by Section 2 must be found to exist before the conclusion of the interstate journey and must be the dominant motive of such interstate movement. And the transportation must be designed to bring about such result. Without that necessary intention and motivation, immoral conduct during or following the journey is insufficient to subject the transporter to the penalties of the Act." Mortensen v. United States, 322 U.S. 369, 373–374, 64 S.Ct. 1037, 1040, 88 L.Ed. 1331 (1944).

■ This case fails to meet these requirements of proof. The probative value of the telephone call from Ernestine McConney to Gretchen Ferguson was nil. There was no testimony of what was said nor of where the call was from. Not only is there nothing to show that appellant even knew about the call, but the call from the "victim" is consistent with the hypothesis that the initiative was actually hers.

■ The testimony that Mrs. McConney's car was registered in New York is of little value. This has been held insufficient to establish the necessary "interstate" element necessary in similar crimes. Yarbrough v. United States, 309 F.2d 936 (10 Cir. 1962); Kelly v. United States, 246 F.2d 864 (10 Cir. 1957). The Fourth of July visit to accompany his wife to a holiday barbecue outing along with other people of apparently good reputations only establishes that appellant was once again in Connecticut.

■ Proof that appellant and his wife resided in Albany, New York and were later in Bridgeport, Connecticut where the wife engaged in prostitution is likewise of little probative value.

"It seems to us contrary to the well settled rule that to sustain the conviction the inferences reasonably to be drawn from the evidence must not only be consistent with his guilt but inconsistent with every reasonable hypothesis of his innocence. Kassin v. United States, 5 Cir., 87 F.2d 183, 184; Rent v. United States, 5 Cir., 209 F.2d 893. The evidence in this case is entirely consistent with the woman being the sole, willing, and exclusive cause of her own transportation." McTyre v. United States, 213 F.2d 65, 67 (5 Cir. 1954).

All of this testimony viewed in the light most favorable to the government was insufficient to prove the corpus delicti. Indeed, Judge Foley correctly viewed it as insufficient in considering defendant's motion for acquittal. United States v. Hon, 306 F.2d 52 (7 Cir. 1962); Harms v. United States, 272 F.2d 478 (4 Cir. 1959); Dailey v. United States, 260 F.2d 927 (5 Cir. 1958); United States v. Ross, 257 F.2d 292 (2 Cir. 1958); United States v. Grace, 73 F.2d 294 (2 Cir. 1934); Alpert v. United States, 12 F.2d 352 (2 Cir. 1926).

■ The remaining question is whether the falsehoods in the statement given by appellant to the F. B. I. agent were sufficient to swing the balance in favor of sending the case to the jury and supporting a verdict of guilty. It is true that exculpatory statements made to law enforcement officials, when shown to be false, are circumstantial evidence of guilty consciousness and have independent probative force. Wilson v. United States, 162 U.S. 613, 16 S.Ct. 895, 40 L.Ed. 1090 (1896); United States v. Montalvo, 271 F.2d 922 (2 Cir. 1959); United States v. Bando, 244 F.2d 833 (2 Cir. 1957).

The F. B. I. agent testified that appellant told him that he resided in Albany, New York, worked at a club in Kerhonkson, New York and had previously married Ernestine Mitchell in New York City. These statements were apparently true. He also told him he had not transported his wife from Albany to the Ferguson's home in Bridgeport. As set out above there is no positive evidence that appellant did transport the "victim" from Albany to New York. The evidence shows that appellant and his wife, residents of Albany, New York, after a telephone call by the wife from an undisclosed place, arrived in Bridgeport, Connecticut in a car with New York license plates driven by the appellant.

He also told the agent he had only been in Bridgeport once in his life, almost twenty years ago, and, that during the period June 22 to July 10 he had been at work in Kerhonkson and only had occasion to leave there a few times to visit his wife in Albany. These statements were shown to be false, and can serve as independent circumstantial evidence to support the testimony that he brought his wife to Bridgeport and was there on at least two other occasions, and to show that he came from New York.

■ The trouble is that appellant's statement to the agent that "he had not transported Ernestine from Albany, New York to any place in the United States for the purpose of prostitution," was not shown to be false by other evidence. There is no evidence to show that appellant ever intended his wife to engage in prostitution or that he knew that the Ferguson's home was a house of prostitution. It would place too much weight on defendant's extra-judicial exculpatory statement to authorize a conviction based almost solely on the fact that part of the statement, not involving the corpus delicti of the crime, was shown to be false. The other evidence of guilt was extremely weak, and we do not think the statement was sufficient independent proof to justify denial of the motion for acquittal. None of the decisions cited by the government require a different holding.

The judgment is accordingly reversed.