GOVERNMENT OF THE VIRGIN ISLANDS

v.

FITZGERALD LOVELL, Appellant

No. 15817

United States Court of Appeals

Third Circuit

Argued January 31, 1967

Filed May 22, 1967

*See, also, 378 F.2d 799*

---

RUSSELL B. JOHNSON, ESQ., Christiansted, St. Croix, Virgin Islands, *for appellant*

JOHN E. STOUT, ESQ., Charlotte Amalie, St. Thomas, Virgin Islands, *for appellee*

Before STALEY, *Chief Judge,* and FREEDMAN and COFFIN,* *Circuit Judges*

STALEY, *Chief Judge*

### OPINION OF THE COURT

On the morning of October 2, 1965, a fire was discovered in the residence of Alexandra Manson in the Smithfield

---

* Sitting by designation.

section of Frederiksted on the Island of St. Croix. After the fire was extinguished, the remains of what appeared to be a human body were removed from the premises. Though the remains were assumed to be those of the only occupant of the house, Alexandra Manson, this fact was never scientifically established prior to the burial. However, the remains were subsequently exhumed and tests were performed which almost conclusively establish that the badly charred body was that of Alexandra Manson. This fact is not disputed.

In their investigation into the death, the police learned that the deceased had employed a gardener or handyman who was known as "Baje" or "Bajun" (a nickname given to natives of Barbados). The man in question was identified as Fitzgerald Lovell, and the police ascertained that he was living with an elderly gentleman named Albert Skeet.

The relevant times and dates regarding the apprehension of Mr. Lovell and the events that followed are muddled and unclear from the record and were a source of disagreement at the argument of this case. Mr. Lovell's chronology finds the most corroborating evidence in the record; and for our purposes, his recitation of the events and times will be accepted. According to him, he was asked to accompany police officers to police headquarters on Thursday afternoon, October 7th. At police headquarters, he was turned over to Immigration officials as an "overstay"[1] and was detained at the Richmond Penitentiary. On October 8th, he was picked up at the prison by an Immigration Inspector and taken to the Skeet residence to get his passport. After some delay occasioned by the fact that the Skeet residence

---

[1] The testimony is uncontradicted that Lovell had violated the terms of his admission to the Virgin Islands (as a visitor for pleasure) by accepting employment, that the Immigration office had asked him to voluntarily depart some time in June, and that he did not depart the Islands as requested.

was locked, Lovell was taken back to police headquarters.

Upon his return, the police sought to question him whereupon he became frightened and irrational and fainted.[2] He was taken to the hospital and remained there, under police guard, for approximately ten days. Upon his return to health, Lovell was removed to the Richmond Penitentiary, where he remained until his deportation hearing on November 18th. At his hearing, he was ordered deported. On the next day, he was questioned by the United States Attorney[3] concerning the death of Mrs. Manson. On November 22, 1965, Lovell was formally charged with the murder of Alexandra Manson.

Lovell's November 19th statement, which is devoid of culpable admissions, was, in part, read into the record at his trial. From a jury verdict finding him guilty of murder in the first degree, Lovell has appealed. In addition to his contention that his constitutional rights were violated by the admission of his statement into evidence, he urges numerous other errors.

The first and perhaps most substantial question raised is the admissibility of the statement given by Lovell to the United States Attorney. We assume for the purpose of resolving this issue that the statement constituted a confession and, as such, is governed by the rules relating to the admissibility of confessions. Cf., Miranda v. Arizona, 384 U.S. 436, 444 (1966). Appellant's challenge to admissibility is two-pronged; his first contention rests on the Constitution, while his second basis for exclusion is grounded on the Federal Rules of Criminal Procedure, 18 U.S.C., and the Rules Governing the Virgin Islands Municipal Court, 5 (App. IV) V.I.C.

---

[2] No issues, constitutional or otherwise, were raised either at the trial or here concerning these events.

[3] It is the duty of the United States Attorney to prosecute local offenses in the name of the Government of the Virgin Islands. Revised Organic Act of 1954, Vol. I (Historical Documents) V.I.C. § 27 (1966 Supp.).

■ The constitutional assault on admissibility involved no issue of mental or physical coercion. Instead, appellant relies on recent Supreme Court decisions which establish per se guidelines for the exclusion of confessions obtained as a result of "in custodial interrogation." In particular, he cites and relies upon Escobedo v. Illinois, 378 U.S. 478 (1964), and Miranda v. Arizona, 384 U.S. 436. Since this case was tried before the date of the Miranda decision, Johnson v. New Jersey, 384 U.S. 719 (1966), obviates the necessity of applying Miranda's standards.[4]

■■ The Escobedo standards, however, are applicable since this case was tried subsequent to the date of its decision. In that landmark case, the Supreme Court held:

"that where * * * the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogation that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'the Assistance of Counsel' in violation of the Sixth Amendment * * *." 378 U.S. at 490–91.

The Government contends, though without much vigor, that Escobedo does not apply to appellant's interrogation on November 19th because the case was in the investigatory, as opposed to the accusatory, stage at that time. We cannot agree; the record clearly demonstrates that the investigation had focused on the appellant. A search warrant had been issued on October 8th to permit a search of Lovell's belongings. The thoroughness of the police investigation of Lovell's activities prior to his November 19th interrogation, revealed by the type of questions asked him and buttressed by the testimony of the police at the trial,

---

4. If the case must be retried, it is clear that Miranda must be applied. See Gibson v. United States, 363 F.2d 146 (C.A.5, 1966).

conclusively establishes that their inquiry at the time of the interrogation was no longer a general one.

Having decided that Escobedo applies, we must determine whether Lovell was adequately advised of his rights and intelligently waived them. There is no issue here concerning United States ex rel. Russo v. New Jersey, 351 F.2d 429 (C.A.3, 1965), vacated and remanded on other grounds, 384 U.S. 889 (1966), and whether a request for counsel is necessary before Escobedo can be invoked. The transcript of the interrogation, the pertinent parts of which are reproduced below,[5] negates any issue concerning Russo; however, it does shed light on the questions before us.

The record discloses that Lovell was adequately advised of both his right to remain silent and his right to counsel. While the United States Attorney did not explicitly state to Lovell that " he had a right to remain silent," he was told no less than four times that he did not have to answer any questions. In addition, he was told that "one of the reasons you do not have to answer any questions * * * [is that] any answer you give could be used against you in a court of law * * *." Lovell was also advised that he was free to consult a lawyer.

 Having decided that Lovell was properly advised of his rights, we must now consider whether he intentionally relinquished or abandoned them. Johnson v. Zerbst,

---

[5] "Mr. Christian [United States Attorney]: * * * Therefore, before I ask you any questions, I want you to know that you do not have to answer any questions I ask here unless you want to. When the legal officers are investigating any crime, any person whether they suspect them of being involved or not, does not have to answer any questions. If, however, I ask you any questions and you choose to answer, I am going to have Mrs. Rivera here write down the questions and whatever answers you give. She will type it up sometime, and we will then let you read it, and if you cannot read, we will read it to you and ask you if you are willing to sign it. One of the reasons you do not have to answer any questions, any answer you give could be used against you in a court of law if it turns out that you are involved. Under our system of government, any person can consult a lawyer. If you do not want to answer any questions before you consult a lawyer, that is up to you. I would like to ask you a few questions. If you know the answer, will you answer."
"Mr. Lovell: Yes."

304 U.S. 458, 464 (1938). The burden of proving waiver rests with the Government, Miranda v. Arizona, 384 U.S. at 475, citing Escobedo v. Illinois, 378 U.S. at 490 & n. 14, since there is a presumption against waiver of constitutional rights. Brookhart v. Janis, 384 U.S. 1, 4 (1966); Glasser v. United States, 315 U.S. 60, 70–71 (1942). Though Lovell is a Barbadian, Barbados is an English-speaking country; and consequently there was no language barrier to be hurdled in his interrogation, nor may it be made a basis for showing lack of intelligence or understanding of the advice given or questions asked. Compare United States ex rel. Cuivas v. Rundle, 258 F.Supp. 647, 659 (E.D.Pa., 1966). The record demonstrates that Lovell was literate, that he comprehended the questions asked him, that he refused to answer some questions because he thought they were unreasonable, and that those he did reply to were answered fluently and freely. Under these circumstances, we must conclude that the normal presumption against waiver was rebutted and hold that appellant voluntarily, knowingly and intelligently waived his rights.[6]

■ Appellant's other argument for the exclusion of the statement rests on Rule 5 of the Federal Rules of Criminal Procedure and Rule 123 of the Rules Governing the Municipal Courts of the Virgin Islands. Both rules provide that an arrested person should be taken before a judicial officer "without unnecessary delay." He contends that these rules were violated and cites Government of the Virgin Islands v. Solis, 4 V.I. 615, 334 F.2d 517 (C.A.3, 1964); Mallory v. United States, 354 U.S. 449 (1957); and McNabb v. United States, 318 U.S. 332 (1943), for the proposition that his statement was therefore inadmissible.

Lovell maintains that he was held for more than forty days before he was questioned by the United States At-

---

[6] Our finding on this issue distinguishes this case from United States v. Slaughter, 366 F.2d 833, 840–41 (C.A.4, 1966).

torney. To this the Government replies that he was not being held for murder by the police, but rather, he was in the custody of the Immigration officials for violating the Immigration laws. While Lovell admits that he illegally "overstayed," he argues that his detention was a ruse— that in reality he was being held for murder.

The record fully supports the conclusion that he was validly detained pending a deportation hearing; and that after he was given a hearing and ordered deported, he was legally held pending deportation. It was during the period he was awaiting deportation that he was questioned. The legality of his detention at the time he was questioned has not and cannot be disputed on this record, and that fact alone is dispositive of the issue before us. Even if we concede that he was being detained primarily to further the police investigation into the death of Mrs. Manson, the condemnation of this practice and the resultant inadmissibility of the statement enjoys only minority support on the Supreme Court. The case on point is United States v. Carignan, 342 U.S. 36 (1951). There, as here, the criminal defendant was detained on charges other than those on which he was eventually convicted and from which he was appealing. Carignan's argument is identical with the one made here—that regardless of the legality of his detention, he should have been taken before a commissioner "without unnecessary delay" and that his confession obtained beyond that time was inadmissible. The Court held:

"One cannot say that this record justifies characterization of * * * [Carignan's] confession as given during unlawful detention. * * * He had been arrested and committed for the assault perpetrated six weeks after the murder. His detention, therefore, was legal. * * * This case falls outside the reason for the rule [Rule 5], i.e., to abolish unlawful detention. * * *

* * *

"We decline to extend the McNabb fixed rule of exclusion to statements to police or wardens concerning other crimes while prisoners are legally in detention on criminal charges." 342 U.S. at 43–45.

Finding no reason why Carignan should not apply here,[7] we hold that the legality of Lovell's detention pending his deportation prevents him from arguing that Rule 5 was violated.

With regard to Rule 123 of the Rules Governing the Municipal Courts, 5 (App. IV) V.I.C. Rule 123, the result must be the same. We recently pointed out in Rivera v. Government of the Virgin Islands, 6 V.I. 155, 375 F.2d 988 (C.A. 3, March 30, 1967) (slip op. at p. 3) the similarity of purpose between Rule 123 and Rule 5 of the Federal Criminal Rules. We noted that the purpose of the preliminary hearing was to determine whether there was probable cause to detain the suspected person for the grand jury or trial. Since Rule 123, like Federal Rule 5, is also aimed at unlawful or illegal detention, Lovell's lawful confinement prevents his invocation of it.

The next issue is whether the Government should have been required to produce an investigative report filed by the chief investigator. The request for the production of the document was made after the investigator had testified on direct examination, and the ostensible purpose for the request was to enable the defense to attack the witness's credibility. The specific question raised is whether the Jencks Act, 18 U.S.C. § 3500, is applicable to prosecutions instituted by the Government of the Virgin Islands. The Government argues that the Jencks Act cannot apply to such prosecutions simply because the statute applies only to those prosecutions "brought by the United States." The fallacy of this reasoning is that it overlooks the his-

---

[7] We do not believe that the viability of Carignan as precedent has been weakened or destroyed by Escobedo or Miranda. Their respective rules spring from different bases. Escobedo and Miranda both involve constitutional proscriptions, whereas Mallory-McNabb is a result of the Court's supervisory power. Though it is true that the former will control the latter, we have found no constitutional violation here. We also note that Carignan was cited in both the majority and dissenting opinions in Miranda without any indication that its precedential value had been weakened.

tory of the Jencks Act and assumes that the statute will apply only if it can be determined that Congress intended it to apply.

In Jencks v. United States, 353 U.S. 657 (1957), the Supreme Court exercised its supervisory power, in the absence of Congressional legislation, to prescribe procedural rules for the administration of criminal justice. Congress, fearful of the far reaching consequences of that decision, saw fit to enact limiting and clarifying legislation. The result was the so-called Jencks Act. See Palermo v. United States, 360 U.S. 343, 345–48 (1959).

The Virgin Islands Legislature has expressed no view with regard to the production of documents for the purpose of impeaching Government witnesses in prosecutions initiated by the Virgin Islands. We are not, therefore, presented with the difficult questions of whether the Jencks case perforce applies or may be applied to such prosecutions and whether the Virgin Islands Legislature, like Congress, has the power to override the supervisory power of the Supreme Court.

■■ As an appellate court having jurisdiction over appeals from criminal prosecutions brought by the Government of the Virgin Islands, we also have supervisory power. We believe that the legislative gloss placed on the Jencks case by Congress in enacting 18 U.S.C. § 3500 has resulted in a sound rule. Policy and logic dictate that such a rule should obtain in all criminal prosecutions in the Virgin Islands. See Government of the Virgin Islands v. Solis, 4 V.I. at 620, 334 F.2d at 519. Moreover, the application of the Jencks Act to territorial criminal prosecutions is not without precedent. The Act has been applied in such prosecutions in the District Court of Guam since 1959. See Taitano v. Government of Guam, 187 F.Supp. 75, 78 (D.C. Guam, App. Div. 1960).

■ The application of the Act in the instant case does not require a reversal and the awarding of a new trial. Since we do not have the requested reports before us, we must follow the procedure outlined by the Supreme Court in Campbell v. United States, 365 U.S. 85, 98–99 (1961). In accordance therewith, the case will be remanded to the district court for hearing to determine whether the reports fall within the Act. See Annot., 5 A.L.R.3d 763 (1966). If the reports are within the Act, the court must proceed to determine whether the error committed was harmless. See United States v. Knox Coal Co., 347 F.2d 33, 46–48 (C.A.3), cert. denied, sub nom. Lippi v. United States, 382 U.S. 904 (1965). If the report is both within the Act and the error committed was not harmless, then a new trial must be awarded.

Appellant also objects to the district court's denial of his request to open to the jury after the prosecution had presented its case-in-chief rather than immediately after the prosecution had given its opening statement. 5 V.I.C. § 3631 provides that after the jury is impaneled and sworn and the Government opens "the defendant, or his counsel, may then state his defense, and may briefly state the evidence he expects to offer in support of it * * *."

■ ■ There can be no question that the conduct of the trial should be in accordance with the above-quoted statute. However, the statute should not be rigidly binding on either the court or the parties. Deviations from it should be allowed when proper reasons are presented to the court, and the course charted by the court should not be disturbed on appeal absent an abuse of discretion. Having the full transcript before us, it appears that counsel's desire to postpone his opening rested on his hope to exclude much of the damaging testimony the Government would offer. Though we might conjure up a persuasive tactical basis for counsel's request, he never detailed any reasons

to the district court. Viewing the cause as it existed when the request was made, we cannot find an abuse of discretion.

Of the remaining issues, the only one which we will discuss at length concerns a jury instruction. The court charged that if the jury found that the defendant's exculpatory statements (as read into the record from his interrogation) were false, it could consider this as circumstantial evidence pointing to a consciousness of guilt. Neither party has cited nor has our research disclosed any case decided by this court which approves such an instruction. Nevertheless, for the reasons hereafter listed, the instruction was correct.

 An extrajudicial statement given to police authorities, if constitutionally obtained, is usually admitted into evidence under the admission exception to the hearsay rule. There are, however, instances where the questions asked are simply denied. If they are denied without any explanation, they are inadmissible, for they fall within no recognized exception to the hearsay rule.[8] See IV, Wigmore, Evidence § 1072 (5) (3d ed.) ; Corey v. United States, 305 F.2d 232, 239 at n. 20 (C.A.9, 1962), cert. denied, 371 U.S. 956 (1963). Where, however, the accused has offered some explanation and the truth of his exculpatory reply is brought into dispute by conflicting evidence, it is no longer a question of hearsay, but one of circumstantial proof. Wigmore says that the

"fabrication * * * is receivable against him as an indication of his consciousness that his case is a weak or unfounded one; and from that consciousness may be inferred the fact itself of the cause's lack of truth and merit. The inference thus does not apply itself necessarily to any specific fact in the cause, but operates,

---

[8] The general rule is that if the statement is comprised of both exculpatory and inculpatory remarks, all of the statement is admissible. Annot., 2 A.L.R. 1017, 1022–29 (1919), supplemented by 26 A.L.R. 541 (1923). As noted in the above annotations, uncontradicted exculpatory statements may be binding on the prosecution. See Opper v. United States, 348 U.S. 84, 91–92 (1954).

indefinitely though strongly, against the whole mass of alleged facts constituting his cause." II Wigmore, Evidence § 278(2) at 120 (3d ed.).

The instruction given by the court was taken verbatim from Mathes & Devitt, Federal Jury Practice and Instructions § 8.14 at 99–100 (1965 ed.), and, as noted there, enjoys widespread acceptance in Federal criminal cases.[9] We can find no error in the giving of such well-established instruction.

We have considered the other issues raised by appellant and conclude that no error was committed by the district court in any of the instances discussed.

The judgment of the district court will be vacated and the cause remanded for disposition not inconsistent with this opinion.

FREEDMAN, *Circuit Judge*, concurring

Since the judgment is being vacated and the cause remanded for further proceedings, I would on remand require additionally a preliminary hearing before the district judge to determine whether appellant's statement was given

---

[9] A similar instruction has been approved by the Seventh Circuit Judicial Conference, La Buy, Manual on Jury Instructions in Federal Criminal Cases, 33 F.R.D. 523, 592–94 (1964). The present rule appears to have been derived from the Supreme Court's language in Wilson v. United States, 162 U.S. 613, 620–21 (1896). It has been accepted in the following courts of appeals:

1st Circuit: Dirring v. United States, 328 F.2d 512, 515, cert. denied, 377 U.S. 1003 (1964).

2nd Circuit: United States v. McConney, 329 F.2d 467 (1964); United States v. Bando, 244 F.2d 833, 842, cert. denied, 355 U.S. 844 (1957); United States v. Simone, 205 F.2d 480, 483 (1953).

5th Circuit: Andrews v. United States, 157 F.2d 723, 724 (1946), cert. denied, 330 U.S. 821 (1947).

6th Circuit: Stanley v. United States, 245 F.2d 427, 433 (1957).

7th Circuit: United States v. Inciso, 292 F.2d 374, 380, cert. denied, 368 U.S. 920 (1961).

8th Circuit: Rizzo v. United States, 304 F.2d 810, 830, cert. denied sub. nom. Nafie v. United States, 371 U.S. 890 (1962).

9th Circuit: Corey v. United States, 305 F.2d 232, 238–39 (1962), cert. denied, 371 U.S. 956 (1963).

10th Circuit: Word v. United States, 199 F.2d 625, 626 (1952), cert. denied, 345 U.S. 936 (1953).

D.C. Circuit: Beck v. United States, 140 F.2d 169, 170 (1943).

voluntarily on an intelligent and knowing waiver of his constitutional rights.

It may be conceded that appellant is a man of adequate intelligence and that he apparently comprehended what he was doing when he answered the questions put to him by the United States Attorney. But the question to which I address myself is not appellant's intelligence or comprehension. The issue that remains is whether he was a free agent or was so in fear that the trial judge should have ruled that despite the caution of the United States Attorney the statement was inadmissible because the government did not carry its burden of proving that appellant had voluntarily waived his constitutional rights to remain silent and to consult counsel.

Appellant was a native of Barbados who had been informed by the immigration authorities that he must leave the Virgin Islands because he had violated the terms of his visitor's permit. As a result of the police investigation of the murder he was taken into the custody of the immigration officials on October 8, 1965, for not having departed voluntarily as he was supposed to have done. But he was not questioned by the United States Attorney with regard to the murder until forty-two days later, on November 19, 1965, after he had been given a hearing the day before on his deportation.

I find it difficult to believe that a man situated as was appellant, in custody for approximately a month and a half under the threat of deportation, voluntarily waived his constitutional rights to remain silent and to consult counsel when he was questioned shortly after the immigration officers had held a hearing and ordered him deported. One in the position of the appellant could hardly have drawn nice distinctions between the immigration officers who controlled the dreaded deportation threat and the prosecutor. For the prosecutor to embark immediately

upon questioning regarding the murder after only a preliminary statement of the right to refuse to answer questions and to obtain counsel does not seem to me to be enough. I believe the circumstances required the United States Attorney to indicate squarely and clearly to the appellant that his waiver of his right to remain silent would not suspend or in any way relieve him from the pending deportation.[1] Absent such a statement deportation hung as a threat which he might escape if he did not offend the prosecutor by refusing to answer his questions. Even though he had already been ordered deported, so long as he was in the Virgin Islands, his hope of remaining cannot be said to have been finally extinguished. To be deported has such grave personal consequences that we may not assume that one would not cling to hope even if to a sophisticated mind acquainted with law it was already without reasonable basis.

Of course, if the district judge had passed this problem in review and decided that the government had carried its burden of proof the case would, for me, be different. I do not believe that this element was considered by the district judge, and absent a finding which included the element of the intimidation of fear as well as the incomprehension of ignorance, I am not prepared to say that the conclusion that appellant waived his constitutional rights to remain silent and to consult counsel is established by the evidence.

---

[1] Instead the United States Attorney undermined the caution on the rights to remain silent and consult counsel by immediately following it with questions which related to and emphasized the pendency of deportation.