UNITED STATES of America,
Appellee,

v.

James Edward LACEY, Appellant.

No. 602, Docket 71–2099.

United States Court of Appeals,
Second Circuit.

Argued March 8, 1972.

Decided April 17, 1972.

---

W. Cullen MacDonald, New York City, Asst. U. S. Atty (Whitney North Seymour, Jr., U. S. Atty., and Peter F. Rient, Asst. U. S. Atty., of counsel), for appellee.

Gretchen White Oberman, New York City, for appellant.

Before FRIENDLY, Chief Judge, TIMBERS, Circuit Judge, and JAMESON, District Judge.*

JAMESON, District Judge:

Appellant, James Edward Lacey, was convicted, after jury trial, of attempting to pass a counterfeit $20.00 Federal Reserve Note and possession and concealment of a second counterfeit note, in violation of 18 U.S.C. § 472.[1]   Appellant

---

* Senior District Judge of the District of Montana, sitting by designation.

1. 18 U.S.C. § 472 provides in pertinent part that, "Whoever, with intent to de-

was 20 years of age and was sentenced pursuant to the Federal Youth Corrections Act.

It is conceded that the bills were counterfeit and that Lacey attempted to pass one bill and possessed the other. He contends that the Government failed to prove that he knew the bills were counterfeit, a necessary element of the crime. The following summarizes the evidence presented by the Government.[2]

Lacey attempted to pay for merchandise at a Woolworth store with a counterfeit $20.00 bill. When the bill was presented to the cashier at the check-out counter she rang a bell to "get the bill checked." [3] A security officer came to the counter, took the bill, and then gave it to the store manager, who arrived within a few seconds. The manager testified that he was handed the bill about 5:15 P.M. He asked Lacey where he had obtained it, and Lacey replied in substance, "I got it as a part of my pay as a plumber."[4]

George Rahmer, a New York City police patrolman, was called about 5:30 P. M. and went to the Woolworth store, where he met the store manager, the security officer, and Lacey. He took Lacey to the store's security office and "advised him of his rights." Lacey stated that he "understood his rights." Rahmer testified that he then asked Lacey, "if he would like to tell us where he got this bill. He said he had gotten it in his paycheck."

Lacey was searched and another $20.00 bill was found in his right rear trouser pocket, "folded up in quarters, stuffed in the lower part of his pocket * * *." Lacey told Rahmer that he had also gotten this bill "in his paycheck."

Lacey was then taken to the precinct station. In completing the arrest papers, Rahmer asked Lacey where he was employed and Lacey stated that he was unemployed. This was approximately one-half hour after the first interview.

Thomas Healy, a special agent of the Secret Service, was called and arrived at the precinct station around 6:30 or 7:00 o'clock. He was given the counterfeit notes, advised Lacey of his constitutional rights, and Lacey replied that he understood them.

Healy took a personal history. Lacey stated that he was unemployed but had been employed a few months before as a plumber's helper with the Department of Parks. He told the agent that he had found the notes "lying on the street on the corner of Fordham Road and the Grand Concourse" at a "bus stop and he found them lying on the street next to the curb."

When Healy told Lacey that Patrolman Rahmer had stated that Lacey told him he received the notes in his paycheck, Lacey said "that was a lie, and he never told the patrolman that."

Lacey told both Rahmer and Healy that he did not know the notes were counterfeit.

When the Government rested, and again after both sides rested, defense counsel moved for a judgment of acquittal on the ground of insufficient evidence in that the Government had "failed to substantiate the material element of the offense, namely knowledge." Both motions were denied.

■ The court properly instructed the jury that in order to find the defendant guilty on the first count it must

---

fraud, * * * attempts to pass * * * or with like intent * * * keeps in possession or conceals any falsely made, forged, counterfeited, or altered obligation or other security of the United States" shall be punished as therein provided.

2. No evidence was presented on behalf of defendant-appellant.

3. The cashier testified that she had noticed that the color of the bill "seemed blue."

4. The store manager was unable to appear at the trial, and the parties stipulated that this would be his tesimony if he were present.

"find beyond a reasonable doubt that the defendant knew at the time that the note was counterfeit and then so knowing attempted to pass it for the purpose of defrauding some person." With respect to the inferences which might be drawn from possession and defendant's exculpatory statements, the court charged:

"While the mere possession of a counterfeit note does not give rise to an inference of knowledge by the possessor that the note is counterfeit, you may infer guilty knowledge from a variety of circumstances, including the defendant's explanation of how he obtained the counterfeits if you feel the facts presented by the government and believed by you to be true warrant such an inference.

"Exculpatory statements, that is explanations tending to explain or excuse an act such as where the defendant obtained the notes when shown to be false, may be circumstantial evidence of guilty consciousness and the jury may consider them as such.

"It is the function of the jury to draw or refuse to draw inferences from the evidence presented."

No exceptions were taken by either party to the court's charge.

▮ This court has held in a number of cases that exculpatory statements, when shown to be false, are circumstantial evidence of guilty consciousness and have independent probative force. See e. g. United States v. Smolin, 182 F.2d 782, 786 (2 Cir. 1950); United States v. Montalvo, 271 F.2d 922, 927 (2 Cir. 1959) cert. den. 361 U.S. 961, 80 S.Ct. 589, 4 L.Ed.2d 543 (1960); United States v. De Alesandro, 361 F.2d 694, 697–698 (2 Cir.) cert. den. 385 U.S. 842, 87 S.Ct. 94, 17 L.Ed.2d 74 (1966).[5]

Appellant does not dispute that the inconsistent statements were admissible against him as substantive evidence of guilt. Rather it is argued that "inconsistent exculpatory extra-judicial statements by a defendant, not involving the corpus delicti of the crime, are insufficient proof of guilt as a matter of law", relying primarily on United States v. McConney, 329 F.2d 467 (2 Cir. 1964).

In *McConney* the appellant had been convicted of violation of the Mann Act, 18 U.S.C. § 2421, in knowingly transporting his wife from Albany, New York to Bridgeport, Connecticut on or about June 22, 1961 for the purpose of prostitution. There was proof that appellant and his wife resided in Albany and were later in Bridgeport and that the wife was engaged in prostitution.

An F.B.I. agent testified that appellant told the agent he had only been in Bridgeport once in his life, almost 20 years before, and that during the period June 22 to July 10 he had been at work elsewhere and only had occasion to leave there a few times to visit his wife in Albany. The court pointed out that, "These statements were shown to be false, and can serve as independent circumstantial evidence to support the testimony that he brought his wife to Bridgeport and was there on at least two other occasions, and to show that he came from New York."

The opinion continues:

"The trouble is that appellant's statement to the agent that 'he had not transported Ernestine from Albany, New York to any place in the United States for the purpose of prostitution,' was not shown to be false by other evidence. There is no evidence to show that appellant ever intended his wife to engage in prostitution or that he knew that the Ferguson's home was a house of prostitution. It would place too much weight on defendant's extra-judicial exculpatory statement to authorize a conviction based almost solely on the fact that part of the statement, not involving

5. This rule is recognized in the 1970 Supplement to Wigmore on Evidence, 3d Ed., through adding to the text of § 278, p. 122: "False exculpatory statements made to law enforcement officers constitute independent circumstantial evidence of guilty consciousness."

the corpus delicti of the crime, was shown to be false." 329 F.2d at 470.

Appellant argues that *McConney* is dispositive of this case. The Government responds that appellant's reliance on *McConney* is misplaced since it did not involve a possessory crime "as to which false exculpatory statements concerning the manner in which possession was obtained are of the utmost relevance to the issue of guilty possession and, therefore, plainly part of the '*corpus delicti*'."

It is true that Lacey told the officers that he did not know the bills were counterfeit, and there is no direct testimony that this statement was false. Could the jury properly draw an inference of knowledge of the counterfeit nature of the bills from Lacey's inconsistent exculpatory statements and admissions to the law enforcement officers?

First, it may be noted that a statement explaining how a person came into possession of counterfeit bills bears a closer nexus to the offenses of knowingly possessing and passing the bills than the statements in *McConney* bore to the offense of knowingly transporting defendant's wife for the purpose of prostitution. Second, and of more significance, is the fact that when it became apparent the first statements would not hold up, Lacey gave another totally different explanation and denied making the first statements. *McConney* accordingly is factually distinguishable.

Lacey's first exculpatory statements to the store manager and the police officer that he received the counterfeit bills as part of his payment as a plumber were first rebutted on his own admission to the police officer a half hour later that he was unemployed. Obviously the initial statements could have been shown to be false without this admission. We do not hold that this false exculpatory statement in itself would be sufficient to prove knowledge. Within two hours, however, Lacey not only told the Secret Service agent that he was unemployed but also at that time gave the inconsistent exculpatory statement that

he found the bills on the street near a bus stop. In addition he then denied making the first statements to the police officer. The most rational explanation of these inconsistent statements and his denial of making the first statements is that he was not telling the truth and his explanation of how he obtained the counterfeit bills was incredible.

It is recognized that the jury might have inferred that Lacey panicked and told a falsehood when confronted with the counterfeit money. That would be a more reasonable inference if the proof were limited to showing that his first statements were false. The jury might also have drawn the inference that Lacey was "protecting the person from whom he received the bills", a possibility suggested by his counsel in arguing that the Government had failed to prove knowledge beyond a reasonable doubt. Under all the circumstances we conclude that the jury was justified in rejecting these possible inferences and finding guilty knowledge beyond a reasonable doubt by reason of Lacey's incredible explanations.

In United States v. Sheiner, 410 F.2d 337 (2 Cir.) cert. den. 396 U.S. 825, 90 S.Ct. 68, 24 L.Ed.2d 76 (1969), involving the sale and possession of fraudulently altered pennies, we held that, "While knowledge is a necessary element of the crime of passing or possessing a defaced coin * * *, a finding of knowledge that is largely inferential is not impermissible." We recognized that "in cases of criminally passing counterfeit United States obligations, guilty knowledge has been held properly inferable from a variety of circumstances, including the incredibility of the defendant's explanation of how she obtained the counterfeits", citing supporting cases. 410 F. 2d at 340. While none of the cases cited are precisely in point, we conclude that the appellant's totally inconsistent explanations and false denial of making the first admittedly false statements are sufficient to permit an inference of guilty knowledge.

Appellant argues further that it was "plain error" for counsel for the Government in summation to argue that "appellant was not an innocent possessor of the notes because, when the first bill was discovered to be counterfeit, he did not 'honestly' tender the second bill to the police with 'a protestation of innocence.'" While we do not consider the argument particularly persuasive, we cannot say in the context of the entire summation on both sides that it was improper.

In any event, counsel for appellant did not object when the argument was made or bring the matter to the attention of the judge, outside the presence of the jury, with a request for a curative instruction.[6] If there were any impropriety in counsel's argument, it clearly did not rise to the magnitude of "plain error."

Affirmed.

---

6. See United States v. Briggs, 457 F.2d 908, 911, 912 (2 Cir. 1972).