## UNITED STATES of America, Appellee,

### v.

### Raymond JOHNSON, Appellant.

### No. 699, Docket 74–2437.

United States Court of Appeals, Second Circuit.

Argued Feb. 18, 1975.

Decided April 1, 1975.

Jerome F. O'Neill, Asst. U. S. Atty., D. Vt. (George W. F. Cook, U. S. Atty., and William B. Gray, Asst. U. S. Atty., D. Vt., on the brief), for appellee.

David A. Gibson, Brattleboro, Vt., for appellant.

Before ANDERSON, MULLIGAN and VAN GRAAFEILAND, Circuit Judges.

ROBERT P. ANDERSON, Circuit Judge:

Defendant Raymond Johnson appeals from his conviction on two counts of a four count indictment based on his presence in an automobile owned and operated by Stephen Loewe, his co-defendant, in which United States Customs officials found two bags of methamphetamine when Johnson and Loewe drove into the United States from Canada at the Port of Entry at High Gate Springs, Vermont, on December 28, 1973.

In an indictment dated January 10, 1974, Johnson and Loewe were charged in three counts with importing methamphetamine into the United States in violation of 21 U.S.C. §§ 812, 952, and 960, and 18 U.S.C.A. § 2; with possession of methamphetamine with the intent to distribute in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2; and with the importation into the United States of merchandise contrary to law in violation of 18 U.S.C. §§ 2, 545. Loewe plead guilty to possession with intent to distribute on February 1, 1974, but on March 8, 1974 Johnson plead not guilty to each of the three counts.

A superseding indictment, filed April 4, 1974, charged Johnson with the three counts alleged in the first indictment and with an additional count, Count I, alleging that he conspired with Stephen Loewe to import methamphetamine into the United States in violation of 21 U.S.C. §§ 812, 952(a). On April 26, 1974 Johnson plead not guilty to all four counts.

Trial by jury commenced June 10, 1974. Johnson's motions for judgment of acquittal at the close of the Government's evidence and at the close of all the evidence were denied. The Government withdrew Count IV prior to submission of the case to the jury, and on June 13, 1974 the jury returned verdicts of guilty with respect to Count I (conspiracy) and Count II (aiding and abetting the importation of a controlled substance), and a verdict of not guilty on Count III (aiding and abetting possession with intent to distribute a controlled substance). Post-trial motions by Johnson for a judgment of acquittal, for a new trial, and for an arrest of judgment with respect to Count I were all denied on October 11, 1974. Johnson was sentenced under the Federal Youth Corrections Act on October 15, 1974.

 The central issue on appeal is whether there was sufficient evidence to allow the jury to conclude that Johnson was guilty beyond a reasonable doubt of each of the offenses charged. Viewing the evidence as we must, in the light most favorable to the Government, Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Koss, 506 F.2d 1103, 1106 (2 Cir. 1974); United States v. Sisca, 503 F.2d 1337, 1342 (2 Cir. 1974); United States v. McCarthy, 473 F.2d 300, 302 (2 Cir. 1972); and taking into account the evidence presented by the defense as well as that presented by the Government, United States v. Tramunti, 500 F.2d 1334, 1338 (2 Cir. 1974); United States v. Pui Kan Yam, 483 F.2d 1202, 1208 n. 7 (2 Cir. 1973), cert. denied, 415 U.S. 984, 94 S.Ct. 1578, 39 L.Ed.2d 881 (1974); United States v. Arcuri, 405 F.2d 691, 695 n. 7 (2 Cir. 1968), cert. denied, 395 U.S. 913, 89 S.Ct. 1760, 23 L.Ed.2d 227 (1969), we hold that there was not.

On the basis of all the evidence presented, the jury could have found the following facts.

Johnson and Loewe had been boyhood friends in Milford, Connecticut, and their friendship had continued although Loewe moved to Walpole, New Hampshire with his parents around October, 1969.

On December 26, 1973 Johnson traveled from his home in Milford to Walpole to take his customary Christmas gift to Loewe's parents. When he arrived, however, Loewe's parents were in Connecticut visiting relatives and Loewe was going to Montreal to try to buy a motorcycle. Johnson agreed to go along with Loewe and they traveled to St. John, Quebec, where they registered in a motel. They spent the evening watching television in their room.

Loewe left the motel room about 2:00 a. m. on December 27th, while Johnson was asleep, to go to a pre-arranged meeting with his methamphetamine supplier "connection" at a bar in Montreal. He parked his car and removed the front door panel on the passenger side before entering the bar where he purchased a substantial amount of methamphetamine for $3,000. He returned to the car, placed the methamphetamine in the door cavity, replaced the door panel, and returned to the motel to rejoin Johnson who was still asleep. There was no evidence to show that Loewe had ever informed Johnson that he was using and selling methamphetamine (Speed).

When Johnson awoke about 9:00 a. m. that morning, he and Loewe went into Montreal where they spent the day wandering from eating houses to bars, seeking information about a possible auction of police motorcycles and equipment, but they found none. That night they slept in Loewe's car in a parking lot in Montreal and after breakfast and a few more unsuccessful calls to motorcycle shops on the morning of December 28th, they decided to return to the United States.

Loewe was operating the 1968 Chevrolet automobile, which bore a New Hampshire registration, when they entered the United States from Canada around 2:00 p. m. on December 28, 1973 at High Gate Springs, Vermont. United States Immigration Inspector John R. Hurley asked the purpose of their trip to Canada and both men indicated that they had gone to look for motorcycle parts. Inspector Hurley noticed that Johnson "seemed nervous and ill at ease" and therefore referred the automobile for a secondary Customs' inspection, which is, in effect, a thorough search.

During this investigation Customs Inspector Hamilton shone a flashlight down the slot for housing the windowpane of the right front door and observed what appeared to be a piece of cellophane or a plastic bag at the bottom of the door cavity. The door panel was removed and Inspector Hamilton pulled out two cellophane bags, one larger than the other, both of which contained a white grainy substance. The bags were initialed by Hamilton and then given to Senior Inspector John Clark, the Acting Port Director, for safekeeping. Clark, weighed the bags, found them to be 525 grams, and placed them in a safe at the office at High Gate Springs. The following Monday morning, December 31st, he mailed them for analysis to the United States Customs Laboratory in Boston.[1]

Johnson and Loewe had been standing near the passenger door during the search but after the first bag was removed from the door, they were taken by Inspector Walter R. Kiniry inside the office of the Immigration and Customs Service where they were searched for weapons. They were not interrogated, however, until Special Agent Garry Gardner, who was called to High Gate Springs following the finding of the plastic bags, arrived at 5:00 p. m. During the thirty to forty-five minute wait for Gardner's arrival, Johnson and Loewe were seated side-by-side and at one point Johnson stopped Inspector Kiniry and asked, "Does it matter that I am a hitchhiker?" Inspector Kiniry replied that Johnson could tell his story to the special agent.

When questioned thereafter by Gardner, Johnson told him that he had hitchhiked to St. John, Quebec, to visit a girl whom he had met the previous summer in New England, but that he had been unable to locate her and was hitchhiking south when he was given a ride by Loewe. He also indicated that he had never before seen Loewe and that he had never been in Walpole, New Hampshire. He also disclaimed any knowledge of the bags found in the car, and he was then released.

The evidence before the jury demonstrated that Johnson and Loewe had been close friends for many years; that Johnson knew that Loewe had been previously arrested for illegal activities; that both plead guilty in New Jersey to a misdemeanor charge of entering that State for an illegal purpose when they were caught transporting stolen motor-

---

1. Anna E. Finnerty, a chemist at the United States Customs Laboratory in Boston, testified that she received the two plastic bags taken from Loewe's car (Government Exhibits 1 and 2) by registered mail on January 8, 1974. Chemical tests established that the bags contained methamphetamine. When she weighed the two bags, however, they had a gross weight of 315 grams, approximately 215 grams less than the weight recorded by Acting Port Director Clark. Since there had been no testimony concerning whether or not the safe at High Gate Springs was locked during the period between Friday and Monday, no testimony as to who may have had access to the safe in that time interval, and no testimony concerning the manner in which the plastic bags were sealed by Clark, counsel for Johnson objected to the admission of this evidence. Because this court holds that there was insufficient evidence to convict in any event, we need not discuss possible defects in the Government's proof of a chain of custody of the methamphetamine from the time it was removed from Loewe's car until it was received for chemical analysis in Boston. While such defects, if any, would go more to the weight of the evidence than to its admissibility (see United States v. S. B. Penick & Co., 136 F.2d 413, 415 (2 Cir. 1943), it behooves the Government in the future to show greater care both in its handling of seized contraband and in its chain of custody proof at trial.

cycles through that State in a trailer; that Johnson had taken at least one other trip with Loewe into Canada but that a thorough search of Loewe's vehicle at United States Customs had failed to reveal any contraband; that Johnson was a passenger in a Chevrolet automobile owned and operated by Loewe on December 28, 1973, when the methamphetamine was found inside the panel of the passenger door; that Johnson knew when they left for Montreal on December 26th that Loewe was on probation for grand larceny and was not allowed to leave either New Hampshire or the United States; and that Johnson made false statements to the Customs agents in an attempt to extricate himself from suspicious circumstances.

Johnson was subsequently arrested on January 8, 1974 in Milford, Connecticut. He asked the reason for his arrest and was told that it related to his entry into Vermont from Canada. He then replied that he had never been in Canada.

The foregoing fails to offer any support for the conclusion that Johnson was either a co-conspirator or an aider and abettor. Since the substantive offense charged was the knowing and intentional importation of a controlled substance into the United States (21 U.S.C. § 960), the Government bore the burden of proving Johnson's knowing participation in that crime.

■ The Government argues that the cumulative weight of the evidence of Johnson's presence in Loewe's automobile at the time the drugs were found, his close association with Loewe, his false exculpatory statements, and his general lack of credibility were sufficient "relevant evidence from which the jury could properly find or infer, beyond a reasonable doubt, that the accused is guilty." United States v. Glasser, 443 F.2d 994, 1006 (2 Cir. 1971), cert. denied, 404 U.S. 854, 92 S.Ct. 96, 30 L.Ed.2d 95 (1971), quoting from American Tobacco Co. v. United States, 328 U.S. 781, 787, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946). It is well established, however, that in order to be an aider and abettor the defendant must associate himself with the venture in some fashion, "participate in it as something that he wishes to bring about," or "seek by his action to make it succeed." United States v. Peoni, 100 F.2d 401, 402 (2 Cir. 1938). See also Nye & Nissen Corp. v. United States, 336 U.S. 613, 619, 69 S.Ct. 766, 93 L.Ed. 919 (1949); United States v. Terrell, 474 F.2d 872, 875 (2 Cir. 1973).

The rule is similar with respect to establishing membership in a conspiracy. See United States v. Cirillo, 499 F.2d 872, 883 (2 Cir. 1974) ("There must be some basis for inferring that the defendant knew about the enterprise and intended to participate in it or to make it succeed"); United States v. Cianchetti, 315 F.2d 584, 588 (2 Cir. 1963) (co-conspirator must make an "affirmative attempt" to further the purposes of the conspiracy); United States v. Falcone, 109 F.2d 579, 581 (2 Cir. 1940) (co-conspirator must "promote [the] venture himself, . . . have a stake in its outcome").

The facts adduced at trial do not show that Johnson had any stake in the alleged venture. There is not an iota of evidence to connect Johnson with Loewe's acquisition, concealment, importation, use, and sale of methamphetamine. No drugs were found on Johnson, nor were his fingerprints found on the plastic bags containing the methamphetamine or in any location that would indicate that he had helped to secret them in the passenger door of Loewe's car. Compare United States v. Taylor, 464 F.2d 240 (2 Cir. 1972). Nor was there any showing that Johnson had ever used or sold drugs, provided Loewe with money that could be used for their purchase or had acted as a leader or lookout for him. Compare United States v. Pui Kan Lam, 483 F.2d 1202 (2 Cir. 1973), cert. denied, 415 U.S. 984, 94 S.Ct. 1578, 39 L.Ed.2d 881 (1974).

■ Absent evidence of such purposeful behavior, mere presence at the scene of a crime, even when coupled with knowledge that at that moment a crime is being committed, is insufficient

to prove aiding and abetting or membership in a conspiracy. See United States v. Sisca, 503 F.2d 1337, 1343 (2 Cir. 1974); United States v. Cirillo, *supra*, 499 F.2d at 883; United States v. Terrell, *supra*, 474 F.2d at 875; United States v. Cianchetti, *supra*, 315 F.2d at 588; United States v. Garguilo, 310 F.2d 249, 253 (2 Cir. 1962). Guilt may not be inferred from mere association with a guilty party. See Evans v. United States, 257 F.2d 121, 126 (9 Cir. 1958), reh. denied, cert. denied, 358 U.S. 866, 79 S.Ct. 98, 3 L.Ed.2d 99 (1958).

■ The Government argues, however, that great weight must be placed on Johnson's admitted lies both at the time of his initial interrogation and his subsequent arrest. While false exculpatory statements made to law enforcement officials are circumstantial evidence of a consciousness of guilt and have independent probative force, United States v. Parness, 503 F.2d 430, 438 (2 Cir. 1974); United States v. Lacey, 459 F.2d 86, 89 (2 Cir. 1972), this Circuit in United States v. Kearse, 444 F.2d 62 (2 Cir. 1971), and United States v. McConney, 329 F.2d 467, 470 (2 Cir. 1964), has held that falsehoods told by a defendant in the hope of extricating himself from suspicious circumstances are insufficient proof on which to convict where other evidence of guilt is weak and the evidence before the court is as hospitable to an interpretation consistent with the defendant's innocence as it is to the Government's theory of guilt. Accord United States v. Lopez-Ortiz, 492 F.2d 109, pet. for reh. en banc denied, 494 F.2d 1296 (5 Cir. 1974).

The judgment of the district court is reversed.