UNITED STATES of America

v.

**Ricardo BERRIOS.**

**Crim. No. 77–290.**

United States District Court,
E. D. Pennsylvania.

Jan. 18, 1978.

David W. Marston, U. S. Atty., by Theodore A. McKee, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

David A. Garfunkel, Fineman & Garfunkel, Philadelphia, Pa., for defendant.

### MEMORANDUM AND ORDER

CAHN, District Judge.

### INTRODUCTION

Defendant Berrios was convicted by jury on December 15, 1977, of five counts of possessing and passing counterfeit curren-

cy. 18 U.S.C. § 472.[1] He now moves pursuant to Fed.R.Crim.P. 29(b) and 33 for a directed acquittal or a new trial on the grounds that (1) the evidence was insufficient to establish that he knew the bills he possessed were in fact counterfeit; and (2) the court erred in instructing the jury that it could infer guilty knowledge from false exculpatory statements defendant made to Secret Service agents after his arrest. Although the issues raised by the defendant are substantial, I believe that the weight of authority correctly supports the government's position. Accordingly defendant's motion is denied.

## FACTS

There is no dispute that the government introduced sufficient evidence for the jury to infer that defendant possessed and passed seventy-two counterfeit $5 bills. The issues raised in defendant's motion relate to the evidence introduced to establish defendant's knowledge that the bills were not genuine. The evidence upon which the government relied to establish guilty knowledge consisted of:

(1) proof that defendant possessed at least seventy-two counterfeit $5 bills;

(2) proof that defendant passed these bills in several lots, mixed together with genuine currency;

(3) proof that defendant possessed collector's items of currency, such as a bill known as a "saddle blanket" and several silver certificates. A statement by defendant explaining this possession gave rise to a possible inference by the jury that defendant considered himself a currency collector;

(4) statements by the defendant made after his arrest to Secret Service agents. When questioned by the agents about where he had obtained the counterfeit currency, defendant first explained that he had received fifteen $5 bills as "change" for a third-party check which he had given to a supplier of defendant's "corner store" in payment of an invoice. After the agents informed defendant that more than fifteen bills had already been traced to him, he agreed that his prior statement was false and explained that he had received the money from an "unknown" Puerto Rican male as payment for a "win" in a numbers lottery.

The first of defendant's exculpatory statements to the Secret Service agents was clearly false and the second was arguably so.[2] There is no dispute that, had defendant chosen to take the stand to present an explanation for his possession of the counterfeit currency, both statements would have been admissible as bearing on his credibility. Since defendant neither took the stand nor attempted to present *any* evidence on his own behalf, however, he asserts that his credibility was not in issue. In view of these circumstances, defendant contends that neither statement was admissible as affirmative proof of his guilty knowledge. Without these statements, defendant reasons that there is no evidence that he knew the nature of the currency. Alternatively, he claims that as a matter of law the statements alone were insufficient evidence to permit a jury to infer knowledge. Finally, defendant argues that even if the statements were admissible I erred in instructing the jury to consider them in

1. 18 U.S.C. § 472 provides in pertinent part: Whoever, with intent to defraud, passes, utters . . . or attempts to pass, utter . . . or with like intent . . . keeps in possession or conceals any falsely made, forged, counterfeited, or altered obligation or other security of the United States, shall be fined not more than $5,000 or imprisoned not more than fifteen years, or both.

2. *Defendant's contention that no evidence was introduced from which the jury could infer the* falsity of the second story is incorrect. Had defendant in fact won the seventy-two counterfeit bills in a numbers game, he would in creating the first explanation for his possession arguably not have underestimated the number of bills traced by the agents. This inconsistency, together with the fact that defendant did not identify the "unknown numbers" courier who paid him, was sufficient for the jury to infer the falsity of the second explanation for the possession.

determining the issue of defendant's state of mind.

## DISCUSSION

■ My charge to the jury concerning defendant's statements to the Secret Service agents was derived from 1 Devitt and Blackmar, *Federal Jury Practice and Instructions* § 15.12 at 466–7. The Court of Appeals for the Third Circuit has expressly approved this instruction as well as the admission into evidence of allegedly false exculpatory statements, such as defendant's, on which the instruction is based. In *Government of Virgin Islands v. Lovell,* 378 F.2d 799, 806 (3d Cir. 1967), *cert. denied,* 396 U.S. 964, 90 S.Ct. 440, 24 L.Ed.2d 428 (1969), the court cited II Wigmore, Evidence § 278(2) at 120 (3d ed.), holding that

> fabrication [as evidenced by false exculpatory statements] . . . is receivable against [the defendant] as an indication of his consciousness that his case is a weak or unfounded one; and from that consciousness may be inferred the fact itself of the cause's lack of truth and merit.

This reasoning was applied to affirm a criminal conviction in *United States v. Lacey,* 459 F.2d 86 (2d Cir. 1972), a case with facts extremely similar to those at issue here. In *Lacey,* the defendant was charged with possessing and passing a counterfeit $20 bill in a Woolworth store. When asked by the store manager where he had obtained the bill, he responded that he had received it "in his paycheck". He repeated this story to a police officer when he was arrested and a second counterfeit $20 bill was found in his possession. Subsequently, upon interrogation by the Secret Service, defendant recanted his prior explanation, stated that he had found the currency on the street, and insisted that he had never claimed to have received the money in his paycheck. After the jury heard a charge similar to the one I gave in the case at bar, it found that defendant knew that the currency was counterfeit. As in this case, the primary evidence supporting the jury's verdict was the possession and the exculpatory statements. The Court of Appeals affirmed the conviction, holding that "exculpatory statements, when shown to be false, are circumstantial evidence of guilty consciousness and have independent probative force." *Id.* at 89. In so holding, the court rejected each of the claims defendant raises here. *See also, Wilson v. United States,* 162 U.S. 613, 620–1, 16 S.Ct. 895, 40 L.Ed. 1090 (1896); *United States v. Matousek,* 483 F.2d 286, 287 (8th Cir. 1973); *United States v. Tager,* 481 F.2d 97, 100 (10th Cir. 1973), *cert. denied,* 415 U.S. 914, 94 S.Ct. 1410, 39 L.Ed.2d 469 (1974); *Rizzo v. United States,* 304 F.2d 810, 830 (8th Cir. 1962); *Andrews v. United States,* 157 F.2d 723, 724 (5th Cir. 1946).

Defendant urges me not to follow these cases. His position is supported by *United States v. Johnson,* 513 F.2d 819, 824 (2nd Cir. 1975), in which the Second Circuit Court of Appeals distinguished *Lacey* and held:

> falsehoods told by a defendant in the hope of extricating himself from suspicious circumstances are insufficient proof on which to convict where other evidence is weak and the evidence before the court is as hospitable to an interpretation consistent with the defendant's innocence as it is to the Government's theory of guilt.

Defendant argues that here the government's evidence, consisting almost exclusively of proof of possession of the counterfeit currency, is indeed weak and consistent with his innocence. Defendant thus requests me to overturn the verdict. *See also United States v. Lopez-Ortiz,* 492 F.2d 109, 115 (5th Cir. 1974); *United States v. McConney,* 329 F.2d 467, 470 (2d Cir. 1964).

■ I reject defendant's contentions for two reasons. As a matter of fact, the government did introduce some evidence in addition to defendant's statements which gave rise to an inference of guilty knowledge. First, defendant possessed an unusually large number of counterfeit bills. This possession raised a possible inference that defendant obtained the currency purposefully for redistribution, rather than incidentally in the course of business. *Cf.*

*Zottarelli v. United States,* 20 F.2d 795, 797 (6th Cir. 1927). Second, the jury could have inferred that defendant possessed special knowledge about currency and thus might be able to identify counterfeit bills. His possession of silver certificates gave rise to the further inference that defendant routinely examined ordinary currency which passed through his hands (perhaps in the operation of his corner store), for the purpose of setting aside collector's items. Finally, the manner in which defendant passed the currency corroborated an inference of guilt. Thus, even if the rule of *Johnson* is correct, the case is distinguishable; *Lacey,* which *Johnson* explicitly refuses to overrule, is factually closer to the case at bar.

Even if *Johnson* is applicable, to the extent that case holds a defendant's exculpatory statements may never serve as affirmative evidence of guilty knowledge, it runs counter to the rule in this circuit. While the Court of Appeals for the Third Circuit has not directly decided the issues presented here, its discussion in *Lovell* illustrates that it would adopt *Lacey* and the cases following the *Lacey* doctrine. While exculpatory statements like the defendant's may often be a result of a panicked overreaction to an arrest, they are sufficiently probative of a defendant's state of mind to be considered by a jury. Were I to adopt the opposite position, as defendant urges, I would in effect hold that an innocent person will always feel the need to fabricate an explanation for his possession of goods he does not know to be illicit. *Cf.* 20 Am.Jur., Evidence § 289. *See also, Allen v. United States,* 164 U.S. 492, 499, 17 S.Ct. 154, 41 L.Ed. 528 (1896); *Andrews v. United States, supra* at 724. Since I believe that such a holding would clearly be erroneous, I decline to do so.

## CONCLUSION

I have held that the exculpatory statements were properly admitted as affirmative evidence of defendant's state of mind. These statements, together with the other evidence outlined above, provided sufficient

facts from which the jury could infer that defendant knew the counterfeit nature of the currency he possessed. Since the jury could properly consider the statements to be exculpatory, I find no error in my charge explicitly permitting the jury to consider them. *See Lovell, supra; United States v. Turner,* 551 F.2d 780, 783 (8th Cir.), *cert. denied,* 431 U.S. 942, 97 S.Ct. 2660, 53 L.Ed.2d 262 (1977). Accordingly, defendant's motion is in all respects denied.