**UNITED STATES of America ex rel. Fred STURDIVANT, Appellant,**

v.

**STATE OF NEW JERSEY and The Principal Keeper of the State Prison at Trenton, New Jersey.**

**No. 13482.**

United States Court of Appeals Third Circuit.

Argued March .23, 1961.

Decided April 24, 1961.

Thomas E. Durkin, Newark, N. J., for appellant.

Brendan T. Byrne, Newark, N. J., (Sanford M. Jaffe, Legal Assistant Prosecutor, Newark, N. J., on the brief), for appellees.

Before KALODNER, STALEY and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

Appellant is under sentence of death imposed by the County Court of Essex County, New Jersey, pursuant to his conviction by a jury in that court of the murder of his four and one-half year old stepdaughter. The judgment was affirmed by the Supreme Court of New

Jersey, and the Supreme Court of the United States denied certiorari. State v. Sturdivant, 1959, 31 N.J. 165, 155 A.2d 771, certiorari denied 1960, 362 U.S. 956, 80 S.Ct. 873, 4 L.Ed.2d 873. The prisoner then instituted this collateral attack upon the state judgment by petition for habeas corpus in the court below. After an appropriate hearing, the district court in a considered opinion analyzed the facts, concluded that the trial and conviction revealed no constitutional infirmity, and denied relief. 188 F.Supp. 227. This appeal followed.

The only substantial question is whether certain talesmen, one of whom served on the trial jury, were selected in a manner inconsistent with the right to fair trial guaranteed by the Fourteenth Amendment.

There is no significant dispute as to what occurred in the selection of the trial jury. For such a trial as this New Jersey practice requires that fourteen jurors be selected and sworn. At the conclusion of the court's charge, twelve of the fourteen who have heard the case are chosen by lot to render a verdict. In this case the regularly summoned jury panel was exhausted after thirteen jurors had been duly selected from it. The court then ordered the sheriff to "return a *tales de circumstantibus* forthwith". That afternoon and the following morning thirty-five additional persons were obtained for jury service and listed on the sheriff's return. After appropriate examination and qualification one of these individuals became Juror No. 14. He was not eliminated when the jury was reduced to twelve members and so participated in the verdict.

What appellant challenges is the method employed by the sheriff in procuring these additional talesmen. Here again the facts are not disputed. A duly designated under-sheriff telephoned officers of some ten large commercial companies, including the telephone company, and requested that several employees be sent to his office for jury service in a murder trial. Juror No. 14 was one of four telephone company employees who reported for jury service that afternoon. On arrival he gave his name to the clerk in the courtroom. The clerk informed the sheriff and the sheriff in turn included the name with the others similarly procured in his formal return of additional talesmen to the court. Juror No. 14 was examined, qualified and seated on the jury the afternoon of his reporting. Therefore, the thirty-one additional employees of various companies who reported the next morning were not needed.

The only exercise of judgment by the sheriff in this process of procuring additional jurors occurred when he decided that the work forces of the telephone company and the other large commercial concerns to which he telephoned were appropriate sources of talesmen. New Jersey practice in such a situation as this is regulated by the following statutory provision:

"If more talesmen are required than the number of jurors remaining on the general panel, the sheriff or other proper officer shall forthwith summon, from among the bystanders or others, such additional number of persons qualified to serve as jurors as may be ordered by the court, and make return thereof immediately, and place the names of the jurors so returned in the box and draw therefrom until the jury is completed * * *." N.J.S. 2A:74–10, N.J.S.A.

Appellant argues that the quoted language requires that the sheriff or his deputy shall personally choose or select individuals who to him seem proper talesmen and not delegate that function to some employer for the making of a choice among his employees. However, the New Jersey Supreme Court concluded that since it was in no way indicated that prejudice resulted in this case, the method of selection of talesmen was not in itself such a deviation from the statutory scheme as to constitute reversible error.

The question we have to decide is somewhat different. Was the method of selecting talesmen, whether or not technically in accord with prescribed New Jer-

sey practice, so poorly adapted to the selection of an impartial group of persons, reasonably representative of the community in cross section, as to deprive the accused of something essential to fairness in trial by jury? This limited requirement of the Fourteenth Amendment has been stated by the Supreme Court as follows:

"Our duty to protect the federal constitutional rights of all does not mean we must or should impose on states our conception of the proper source of jury lists, so long as the source reasonably reflects a cross-section of the population suitable in character and intelligence for that civic duty." Brown v. Allen, 1953, 344 U.S. 443, 474, 73 S.Ct. 397, 416, 97 L.Ed. 469.

Thus, within tolerable limits, a state and its officers may be selective and restrictive in the sources utilized in compiling constitutionally acceptable jury lists. Jurors may be chosen exclusively from names appearing on the local tax rolls. Brown v. Allen, supra. A state may confine jury service "to freeholders, to citizens, to persons within certain ages, or to persons having educational qualifications". Gibson v. State of Mississippi, 1896, 162 U.S. 565, 580, 16 S.Ct. 904, 906, 40 L.Ed. 1075. Even the New York practice of selecting "blue ribbon" panels of prospective jurors on the basis of administratively determined special qualifications has been held constitutionally permissible where the record shows no prejudice to the accused. Fay v. People of State of New York, 1947, 332 U.S. 261, 67 S.Ct. 1613, 91 L.Ed. 2043. Even closer to the situation in the present case, the addition of names to a jury list on the suggestion and recommendation of private organizations is permissible. United States v. Dennis, 2 Cir., 1950, 183 F.2d 201, 216–218, affirmed 1951, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137, without review of the jury issue.

■ In the light of such decisions we think the procedure followed by the sheriff in obtaining talesmen here was clearly within constitutional bounds. It could not reasonably be required that the sheriff comb the entire county for a representative group from which one satisfactory juror could be obtained. The work forces of the telephone company and several other large commercial enterprises would normally be a heterogeneous aggregation of persons representing a cross section of an urban community. Moreover, the fact that management rather than the sheriff himself made the initial selection of the particular employees who should present themselves for jury service could be constitutionally significant only if it should appear that in the process of selecting the members of some significant group or class in the population were excluded or specially treated. It is not even contended that any such discrimination occurred in this case.

■ We have considered appellant's contention that his claim of unconstitutionality is supported by Glasser v. United States, 1942, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680. The appellant can derive no more helpful proposition from that case than Mr. Justice Murphy's statement that the "deliberate selection of jurors from the membership of particular private organizations definitely does not conform to the traditional requirements of jury trial". 315 U.S. at page 86, 62 S.Ct. at page 472. This pronouncement was concerned with the homogeneity of the membership of social and civic organizations, quite different from the diversity among employees of large commercial enterprises. Moreover, as the Court later pointed out in Fay v. People of State of New York, supra, the Glasser decision announces a rule to be followed in the selection of juries in federal courts and in so doing the Court was "not constrained by any duty of deference to the authority of the State over local administration of justice. [It] dealt only with juries in federal courts. Over federal proceedings we may exert a supervisory power with greater freedom to reflect our notions of good policy than we may constitutionally exert over proceedings in state courts * * *." 332 U.S. at page 287, 67 S.Ct. at page 1627. This distinction explains

the contrast between the decision in the Fay case, where the Court sanctioned a New York "blue ribbon" jury panel, and in Thiel v. Southern Pacific Co., 1946, 328 U.S. 217, 66 S.Ct. 984, 90 L.Ed. 1181, where the same Court disapproved the exclusion of all wage earners in the selection of a jury for federal service. It is the Fay case rather than the Glasser case which sheds light upon our present problem.

■ None of the other arguments of appellant, including his objection that talesmen appeared voluntarily on request rather than pursuant to a formal summons, raises a substantial constitutional question. We have examined the record and all of appellant's contentions with the care appropriate when a petitioner alleges that he is about to be deprived of his life without due process of law. We are satisfied that the defendant's guilt has been determined in a fair and proper jury trial.

The judgment will be affirmed.