**Kermit Nello BURTON, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 26070.**

United States Court of Appeals, Ninth Circuit.

Feb. 28, 1973.

On Rehearing Sept. 6, 1973.

---

Kermit Nello Burton, in pro. per.

Richard K. Burke, U. S. Atty., Joseph S. Jenckes, Asst. U. S. Atty., Phoenix, Ariz., for appellee.

Before ELY and CHOY, Circuit Judges, and BYRNE,* District Judge.

ELY, Circuit Judge.

Burton originally pleaded not guilty to a single-count indictment charging conspiracy, 18 U.S.C. § 371, and interstate transportation of an implement fitted for counterfeiting federal securities, 18 U.S.C. § 2314. On November 4, 1968, he appeared with counsel, changed his plea to guilty, and was thereafter sentenced to prison for a term not to exceed two years.

The entire colloquy between Burton and the court concerning acceptance of the guilty plea is as follows:
" *   *   *

MR. DE LEON [Burton's attorney]: Your Honor, the defendant wishes to change his plea to guilty, from not guilty to guilty.

THE COURT: Mr. Burton, you have heard your counsel's statement. You previously pleaded not guilty to this charge, involving a violation of Title 18, United States Code, Section 371 and Section 2314. The cause has been set for trial. Is it your present desire to change your plea from not guilty to guilty?

THE DEFENDANT: Yes, sir.

THE COURT: Are you pleading guilty, Mr. Burton, because you are guilty and for no other reason?

THE DEFENDANT: Yes, sir. That's right.

THE COURT: Has anybody made any threats to you in order to encourage you to plead guilty to *this* charge? [Emphasis supplied] [1]

THE DEFENDANT: No, sir.

---

* Honorable William M. Byrne, Senior United States District Judge, Central District of California, sitting by designation.

1. There were two charges, alleged in the same count, not a simple "this" charge.

THE COURT: Has anybody made any promises of leniency or otherwise to encourage you to plead guilty to *this* charge? [Emphasis supplied][2]

THE DEFENDANT: No, sir.

THE COURT: Are you pleading guilty freely and voluntarily?

THE DEFENDANT: Yes, sir.

THE COURT: Have you talked this over with your attorney, Mr. De Leon?

THE DEFENDANT: Yes, sir.

THE COURT: Are you satisfied with his counsel and advice?

THE DEFENDANT: Yes, I am.

THE COURT: Is this plea in accord with your best judgment, Mr. De Leon?

MR. DE LEON: Yes, it is, sir.

THE COURT: Very well. The plea of guilty will be received, and time for sentencing set for Monday, November 18, at two o'clock, p.m. * * * "

On Monday, November 18, there occurred the following exchange:

"THE CLERK: Case No. C–18167, United States of America vs. Kermit Nello Burton, for sentence, and C–17912, for further proceedings.

MR. MALINSKY: Is your true name Kermit Nello Burton?

THE DEFENDANT: That's right.

MR. MALINSKY: Are you represented by your attorney, Armando De Leon?

THE DEFENDANT: Yes, that is correct.

MR. MALINSKY: Mr. Burton, you have previously entered a plea of guilty to a charge of violating Title 18, *371 and 2314, conspiracy to transport counterfeit tools in interstate commerce.* [Emphasis supplied][3] Do you wish to stand on your plea of guilty on November 4, 1968?

THE DEFENDANT: Yes.

MR. MALINSKY: Do you understand, Mr. Burton, that on the plea of guilty to this charge you can be sentenced up to $10,000, imprisoned up to five years, or both?

THE DEFENDANT: Yes.

MR. MALINSKY: You still wish to stand on your plea?

THE DEFENDANT: Yes.

THE COURT: Mr. Burton, I will repeat what the United States Attorney said. On November 4 you entered a plea of guilty to a charge of conspiracy to transport counterfeit tools in interstate commerce, actually in violation of two federal statutes. The charge was only in one count.

As I understand it, you desire to stand on your plea of guilty as you have entered it on November 4.

THE DEFENDANT: Yes, sir.

THE COURT: You know you don't have to. If you prefer to have the matter tried, you can withdraw your plea and enter a plea of not guilty. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: But you don't want to do that?

THE DEFENDANT: No. I may as well stand on the plea.

THE COURT: Have you talked this over with your attorney, Mr. De Leon?

THE DEFENDANT: Yes, sir.

THE COURT: You are satisfied with his counsel and advice?

THE DEFENDANT: Yes, I am.

THE COURT: You are satisfied, are you, Mr. De Leon, that this is the appropriate procedure for Mr. Burton?

MR. DE LEON: Yes, sir.

THE COURT: Mr. Burton, now is the time for the Court to pass sentence upon you. Do you have anything to say in your own behalf before sentence is pronounced?

THE DEFENDANT: Well, only that I ask the Court to show me leni-

---

2. *See* footnote 1, *supra.*

3. Only § 371 pertained to conspiracy.

ency, because the matter of this conspiracy consisted of actually five of us. It is my understanding that two others have pled guilty, also. So that I think the matter is probably a question of degree of guilty, which I must also stand on. But as far as investigation by the probation officer, I am sure he has turned up information that probably doesn't do my record too much good. So I just ask the Court to show as much leniency as possible."

On August 28, 1969, appellant moved the District Court, pursuant to 28 U.S.C. § 2255, to vacate the conviction and to allow him to plead anew contending, *inter alia* that his plea was not voluntarily entered. It is from the denial of that motion that Burton appeals.

Rule 11, Fed.R.Crim.P., provides:

"A defendant may plead not guilty, guilty or, with the consent of the court, *nolo contendere*. The court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of *nolo contendere* without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. If a defendant refuses to plead or if the court refuses to accept a plea of guilty or if a defendant corporation fails to appear, the court shall enter a plea of not guilty. The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea."

From the foregoing record, there is no indication that the trial court undertook sufficiently to satisfy itself that there was a factual basis for the guilty plea.[4] The short statement by the accused that "Well, only that I ask the Court to show me leniency, because the matter of this conspiracy consisted of actually five of us. It is my understanding that two others have pled guilty also . . .," was not a sufficient foundation upon which to find a factual basis for the plea. At most, that statement merely reflects Burton's unlearned explanation and is the very kind of unskilled conclusion that the trial court must carefully examine.

The prosecution emphasizes that Burton twice assured the trial judge that he was satisfied with the advice and assistance of his appointed counsel. We have long held, however, that assistance of counsel is but one factor to be considered and is far from conclusive.[5] Moreover, mere presence of counsel in the case at hand is particularly inconclusive, for the record rather clearly suggests that defense counsel himself was not even certain of either the charge or the possible penalty.[6]

4. Burton's statement, in response to one of the Court's inquiries, to the effect that he was pleading guilty "because [he was] guilty," goes to the question of the voluntariness of his plea but is not significantly relevant, in the whole context, to the question of whether this Court, upon the record and in the concluding words of Rule 11, "satisfied [itself] that there [was] a *factual* basis for the plea." (Emphasis supplied.)

5. Gomez v. United States, 396 F.2d 323 (9th Cir. 1968); Munich v. United States, 337 F.2d 356 (9th Cir. 1964).

6. "MR. DE LEON [Burton's attorney]: *Excuse me. The charge is on conspiracy, is it not?*
MR. MALINSKY: There is a one-count charge which alleges a violation of Title 18, 371 and 2314, both in the same count.
MR. DE LEON: I just have a question. Is the maximum governed by Section 371—five years?
MR. MALINSKY: Your Honor, there is a violation of two provisions of the Code alleged in the single count, and there is a different penalty for each violation. I think that the maximum possible sentence that could be imposed is imprisonment up to ten years, because that is the penalty for violation of Title 18, Section 2314.
THE COURT: That's probably true, but as long as you join them both, I would take the low one.
MR. DE LEON: Your Honor, the defendant wishes to change his plea to guilty, from not guilty to guilty." (Emphasis supplied).

The prosecution also contends that Burton admitted to the presentence probation officer that he had sent a check cashing machine to one of his co-defendants, and that this contention, if true, provides a factual basis for the plea. This argument also fails. First, since the alleged admission occurred subsequent to the acceptance of the guilty plea, no reliance upon it could have been placed by the court in making the prior Rule 11 determination. In Heiden v. United States, 353 F.2d 53 (9th Cir. 1965), we emphasized:

> "It is contemplated by that Rule, and is the holding in Johnson v. Zerbst [304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461], that the fact that a plea was intelligently entered and that counsel was intelligently waived must be ascertained at the time of arraignment or of waiver and not after the fact. When this is done the facts can be made to appear of record; the understanding of the defendant can actually be accomplished and its accomplishment demonstrated beyond dispute. When the ascertainment is subsequently made after disputes have arisen, a degree of uncertainty is bound to creep in since, in the resolution of disputed facts, problems of credibility and of reliability of memory cannot be avoided."

*Id.* at 55.

Secondly, Burton stresses that he accompanied the alleged statement with repeated protestations of innocence based upon the absence of either his knowledge of any illegal use to be made of the machine, or of his intent to participate in the crime. This denial of guilt, even if combined with an admission of some involvement, should, we think, have prompted the court to pursue further inquiry.[7]

Having concluded that there was a failure to heed the strict requirements of Rule 11, we now consider the appropriate remedy. We are urged both to vacate the District Court's Order denying the section 2255 motion and to set aside Burton's convictions for violation of 18 U.S.C. §§ 371, 2314, thus affording him a new opportunity to plead.

In Castro v. United States, 396 F.2d 345, 348 (9th Cir. 1968), which reaffirmed Heiden v. United States, *supra,* our court declared:

> "Under *Heiden,* it was held that the facts necessary for a determination that the defendant voluntarily and intelligently pleaded guilty must appear in the record at the time the plea is accepted. If the record indicates that this procedure was not followed, and the defendant later asserts facts which indicate that he did not voluntarily and intelligently enter his plea, and a proper examination of the defendant by the judge at the time the plea of guilty was received would have disclosed such facts, *Heiden* holds that prejudice to the accused is established when he is later required to prove or disprove his state of mind at the time of his plea. To avoid this prejudice, according to *Heiden,* the defendant is, under these circumstances, entitled to have his conviction and sentence set aside, and is given a new opportunity to plead to the indictment." (Footnote omitted).

The aim of the *Heiden* court was apparently to encourage trial courts to follow the mandate of Rule 11, and, in the absence of such compliance, to protect defendants from any resulting prejudice.

> "If, by its [Rule 11's] disregard, issues of fact are permitted to arise the defendant has suffered prejudice in being required to resort to the rela-

---

7. Our recent decision in United States v. Sherman, 474 F.2d 303 (9th Cir. 1973), is clearly distinguishable. In contrast to our case, the appellant there " . . . discussed the details of the crime at some length" with the trial judge thus providing the court with the required factual basis for acceptance of the plea. *Id.* at 307.

tively uncertain business of their resolution."

*Heiden*, 353 F.2d at 55. The proper construction of our rule was adopted in McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1968):

> "We are persuaded that the Court of Appeals for the Ninth Circuit has adopted the better rule. From the defendant's perspective, the efficacy of shifting the burden of proof to the Government at a later voluntariness hearing is questionable. In meeting its burden, the Government will undoubtedly rely upon the defendant's statement that he desired to plead guilty and frequently a statement that the plea was not induced by any threats or promises. This prima facie case for voluntariness is likely to be treated as irrebuttable in cases such as this one, where the defendant's reply is limited to his own plaintive allegations that he did not understand the nature of the charge and therefore failed to assert a valid defense or to limit his guilty plea only to a lesser included offense. No matter how true these allegations may be, rarely, if ever, can a defendant corroborate them in a post-plea voluntariness hearing."

394 U.S. at 469, 89 S.Ct. at 1172.

Thus, under established principles, Burton was undeniably prejudiced by the court's failure wholly and fully to comply with the specific mandates of Rule 11. Were we to simply remand this cause with instructions to conduct a hearing to determine whether appellant knowingly and voluntarily entered his plea, and whether there was, at the time of pleading, a sufficient factual basis upon which to accept the plea of guilt, Burton would be put to the very burden which, under *Heiden*, those in his position were sought to be spared.

Finally, we conceive it to be our duty, exercising our supervisory power, to assure that there be the strictest compliance with the requirements of Rule 11.[8] That this court has such supervisory power is hardly deniable. In La Buy v. Howes Leather Co., 352 U.S. 249, 77 S. Ct. 309, 1 L.Ed.2d 290 (1957), the United States Supreme Court held that ". . . supervisory control of the District Courts by the Courts of Appeals is necessary to proper judicial administration in the federal system." *Id.* at 259–260, 77 S.Ct. at 315.[9] Moreover, this pronouncement by the Nation's supreme judicial authority has been reaffirmed by every Court of Appeals, including our own, that has confronted the issue. In a very recent opinion of this court, Guam v. Camacho, 470 F.2d 919 (9th Cir. 1972), Chief Judge Chambers acknowledged the existence of the "supervisory power" of this court. *See also* United States v. Thomas, 146 U.S.App. D.C. 101, 449 F.2d 1177 (1971) (en banc); United States v. Daniels, 446 F. 2d 967 (6th Cir. 1971); In re Ellsberg, 446 F.2d 954 (1st Cir. 1971); United States v. Jones, 140 U.S.App.D.C. 70, 433 F.2d 1176 (1970), cert. denied, 402 U.S. 950, 91 S.Ct. 1613, 29 L.Ed.2d 120 (1971); Dellinger v. Mitchell, 143 U.S. App.D.C. 60, 442 F.2d 782 (1971); Ralph v. Warden, 438 F.2d 786 (4th Cir. 1970), cert. denied, 408 U.S. 942, 92 S.

---

8. Our dissenting Brother characterizes our comments concerning the supervisory power of this court as "dictum." The majority does not intend that it be so interpreted. The overwhelming body of authority which the majority has cited establishes, beyond doubt, that supervisory power is vested in the courts of appeal, and it is most assuredly appropriate for that power to be exercised in a case such as this. We recognize, of course, that the *McCarthy* holding is not retroactive, but long before the opinion in *McCarthy* was issued, this court's opinion in *Heiden* had become, and, as expressly approved by the Supreme Court in *McCarthy*, remains viable. Thus, the majority, mindful of *Heiden's* controlling principle, has relied upon the existence of this court's supervisory power in reaching its dispositive conclusion.

9. *See also* Lego v. Twomey, 404 U.S. 477, 479 n.1, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972).

Ct. 2869, 33 L.Ed.2d 766 (1972); United States v. Butera, 420 F.2d 564 (1st Cir. 1970); United States v. Fioravanti, 412 F.2d 407 (3d Cir.), cert. denied, 396 U. S. 837, 90 S.Ct. 97, 24 L.Ed.2d 88 (1969); United States v. Brown, 411 F. 2d 930 (7th Cir. 1969), cert. denied, 396 U.S. 1017, 90 S.Ct. 578, 24 L.Ed.2d 508 (1970); Boeing Co. v. Shipman, 411 F. 2d 365 (5th Cir. 1969) (en banc); United States v. Dooling, 406 F.2d 192 (2d Cir. 1969), cert. denied, 395 U.S. 911, 89 S.Ct. 1744, 23 L.Ed.2d 224 (1969); Sanders v. Russell, 401 F.2d 241 (5th Cir. 1968); Pea v. United States, 130 U.S.App.D.C. 66, 397 F.2d 627, 637 (1968) (rehearing en banc); ACF Industries, Inc. v. Guinn, 384 F.2d 15 (5th Cir. 1967), cert. denied, 390 U.S. 949, 88 S.Ct. 1039, 19 L.Ed.2d 1140 (1968); Government of Virgin Islands v. Lovell, 378 F.2d 799 (3d Cir. 1967); Thomas v. United States, 368 F.2d 941 (5th Cir. 1966); Tate v. United States, 123 U.S. App.D.C. 261, 359 F.2d 245 (1966); United States v. Freeman, 357 F.2d 606 (2d Cir. 1966); Black v. United States, 122 U.S.App.D.C. 393, 355 F.2d 104 (1965); United States v. Inman, 352 F. 2d 954 (4th Cir. 1965); Ford v. United States, 122 U.S.App.D.C. 259, 352 F.2d 927 (1965) (en banc); Smith v. Katzenbach, 122 U.S.App.D.C. 113, 351 F.2d 810; Natural Resources, Inc. v. Wineberg, 349 F.2d 685 (9th Cir. 1965), cert. denied, 382 U.S. 1010, 86 S.Ct. 617, 5 L.Ed.2d 525 (1966); Jones v. United States, 119 U.S.App.D.C. 284, 342 F.2d 863 (1964) (en banc); United States v. D'Angiolillo, 340 F.2d 453 (2d Cir.), cert. denied, 380 U.S. 955, 85 S.Ct. 1090, 13 L. Ed.2d 972 (1965); United States ex rel. Sturdivant v. New Jersey, 289 F.2d 846 (3d Cir.), cert. denied, 368 U.S. 864, 82 S.Ct. 109, 7 L.Ed.2d 61 (1961); Wildeblood v. United States, 106 U.S.App.D.C. 338, 273 F.2d 73 (1959) (Burger, J.); Delaney v. United States, 199 F.2d 107 (1st Cir. 1952); Helwig v. United States, 162 F.2d 837 (6th Cir. 1947).

Accordingly, the District Court's Order is reversed. Upon remand, the judgments of conviction will be vacated and Burton will be allowed a new opportunity to plead to the charges of the indictment.

Reversed and remanded.

WILLIAM M. BYRNE, Sr., District Judge (dissenting):

I respectfully dissent.

█ The majority, insensitive to the District Court findings, weighs the facts and concludes "that there was a failure to heed the strict requirements of Rule 11."

Not only did the District Court, meticulously question Burton on November 4, 1968, before determining that his plea was made voluntarily with understanding of the nature of the charge and the consequences of the plea, but the interrogation was repeated on November 18th, at which time the court even offered to permit the accused to withdraw his plea and enter a plea of not guilty. Surely this period must be considered a part of "the time the plea is accepted." [1]

█ To support its view that no reliance could have been placed by the court on Burton's admissions to the probation officer, the majority cites Heiden v. United States, 353 F.2d 53 (C.A. 9, 1965), where this court stated, "the fact that a plea was intelligently entered— must be ascertained at the time of arraignment or of waiver and not after the fact. When this is done the facts can be made to appear of record; . . . When the ascertainment is subsequently made *after disputes have arisen,* a degree of uncertainty is bound to creep in . . . ." (Emphasis supplied.)

It is clear that *Heiden* was distinguishing the period when the accused is seeking to enter a plea of guilty and the subsequent period "after disputes have arisen," and the accused is claiming that his plea, or (as in the case of *Heiden*) his waiver of counsel, was not voluntary. The interval prior to Burton's sentence on November 18th, when he was again fully questioned and given the opportu-

---

1. See quotation from Castro v. United States in majority opinion.

nity to change his plea, certainly must be included in the period when Burton was seeking to enter a plea of guilty. That is the teaching of *Heiden*.

To further support the view that no reliance could be placed on Burton's admissions, the majority states, "Secondly, Burton stresses that he accompanied the alleged statement with repeated protestations of innocence based upon absence of either his knowledge of any illegal use to be made of the machine, or of his intent to participate in the crime." Although the appellant makes a statement to that effect in his brief filed with this court, the record is devoid of any such protestations when he appeared for sentencing, subsequent to the statement and alleged protestations of innocence, there was no protest or declaration of innocence, but on the contrary further admissions of guilt.

McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), is clearly distinguishable from the instant case. In *McCarthy*, unlike the instant case where the court so meticulously questioned Burton to determine if his plea was voluntary, the District Judge merely advised McCarthy of the maximum penalty and, when requested by the prosecutor, inquired as to whether his plea was the product of threats or promises.

The District Court advised Burton that "on November 4 you entered a plea of guilty to a charge of conspiracy to transport counterfeit tools in interstate commerce, actually in violation of two federal statutes." Anyone who understands the English language understands the meaning of the words "conspiracy", "transport", "counterfeit", and "tools". Burton certainly showed the meaning was clear in his mind when pleading for leniency he stated "this conspiracy consisted of actually five of us." He may not have known all of the intricacies of the law of conspiracy, but he knew the facts. He knew that he and four others conspired to transport counterfeit tools in interstate commerce. That knowledge together with knowledge of the conse-

quences of his plea which he repeatedly asserted to be free and voluntary, was all that was required.

Nothing in the record impeaches Burton's plea or suggests that his admissions in open court were anything but the truth. See Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

Assuming that there was a "failure to heed the strict requirements of Rule 11," which I have attempted to show was not the situation here, it would not avail Burton as his plea was accepted in 1968. The Supreme Court in Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969), issued the following *fiat*: "We hold that only those defendants whose guilty pleas were accepted *after April 2, 1969,* are entitled to plead anew if their pleas were accepted without full compliance with Rule 11." (Emphasis supplied.)

This court decided Norman v. United States, 429 F.2d 1310 (9 Cir., 1970) under the rule of *Halliday*. This case should be disposed of in the same manner.

After concluding that the District Court committed prejudicial error by "failure to wholly and fully comply with the specific mandates of Rule 11," the majority adds a paragraph of dictum relating to the assumed "supervisory powers" of this court.

Until 1943, in the Anglo-American system of justice, the rule that appellate courts could reverse lower courts only when error was present, was never questioned. In McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943), the Supreme Court announced the new doctrine that, *as the court of ultimate review*, it had supervisory powers over lower courts which permitted the reversal of judgments even in the absence of error. The *McNabb* court explained:

"In holding that the petitioners' admissions were improperly received in evidence against them, and that having been based on this evidence their

convictions cannot stand, *we confine ourselves to our limited function as the court of ultimate review* of the standards formulated and applied by federal courts in the trial of criminal cases." (Emphasis supplied.)

A court of appeals is not "the court of ultimate review" and its province as a court is limited to reversing district courts *only when prejudicial error is found.* This being so, and the court having decided the case on what it deems to be prejudicial error, why the dictum?[2]

If the purpose of the embellishment is to chide the district court judges of the Circuit, it is redundant because they know they must not only comply with Rule 11, but with *all* of the Federal Rules of Criminal Procedure. This is so because it is the law which they have taken on oath to abide by, and not because of any assumed "supervisory power" pronouncement. If they commit error they want the Court of Appeals to correct it and they expect the higher court to follow the law in doing so.

I would affirm.

### OPINION ON REHEARING

CHOY, Circuit Judge:

The government's petition for rehearing is granted.

■ The district court's denial of Burton's motion to vacate his conviction on a plea of guilty and to allow him to plead anew is affirmed.

■ I acknowledge that the majority opinion previously entered in this appeal, in which I joined, misconstrued Rule 11, F.R.Crim.P. as requiring the district court to be satisfied that there was a factual basis for a guilty plea at the time the plea was made, and without reliance upon any of the appellant's admissions made to the presentence probation officer. As the government points out in its petition for rehearing, Rule 11 in pertinent part provides:

"The court shall not enter *judgment* upon a plea of guilty unless it is satisfied there is a factual basis for the plea." (Italics supplied.)

And the advisory committee notes found at the end of Rule 11, F.R.Crim.P. say:

"The court shall satisfy itself, by inquiry of the defendant or the attorney for the government, or by examining the *presentence report, or otherwise,* that the conduct which the defendant admits constitutes the offense charged in the indictment or information or an offense included therein to which the defendant *has peladed guilty.* (Italics supplied.)

It seems clear, therefore, that Rule 11 requires the court to determine that there is a factual basis for a plea prior to entry of judgment and not just at the time the plea is accepted.

To read the opinion *and the opinion of the Court of Appeals* in *La Buy* (i. e., 7 Cir., 226 F.2d 703) is to refute any such contention. The Court of Appeals decided the case on the *error of the District Court,* stating "We can only conclude that the orders complained of are beyond the permissive scope of the rule, [Rule 53(b) F.R.Crim.P.] and constitute an abuse of discretion." The Court of Appeals *did not even mention the term "supervisory powers."* The Supreme Court in a 5 to 4 decision stated: "Certainly, as the Court of Appeals found here, there was a clear abuse of discretion." Incidentally, the four dissenting Justices never even mentioned the term "supervisory power." Mr. Justice Clark could only have been referring to the power of Courts of Appeals to reverse District Courts *when prejudicial error is present.*

---

2. The majority apparently holds the view that the Supreme Court in La Buy v. Howes Leather Co., 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290, endowed courts of appeals with the *McNabb* "supervisory power." It is not clear just what Mr. Justice Clark meant when writing for the majority he stated, "We believe that supervisory control of the District Courts by the Courts of Appeals is necessary to proper judicial administration in the federal system. The All Writs Act confers on the Courts of Appeals the discretionary power to issue writs of mandamus in the exceptional circumstances existing here." However, it is clear that it was not intended to mean that the Courts of Appeals had supervisory power to reverse a District Court in the absence of prejudicial error.

While I agree that this court does have supervisory power over the district courts of this circuit, I do not agree with my brother Ely that this case warrants its exercise.

Except for its discussion of this court's lack of supervisory power, with which I disagree, I concur in Judge Byrne's opinion that the requirements of Rule 11 were met in this case.

Affirmed.