In re GRAND JURY PROCEEDINGS.

Appeal of Jacqueline SCHOFIELD.

No. 74–2179.

United States Court of Appeals,
Third Circuit.

Argued Dec. 9, 1974.

Decided Jan. 16, 1975.

**964**

Robert E. J. Curran, U. S. Atty., Walter S. Batty, Jr., Asst. U. S. Atty., Philadelphia, Pa., for appellee.

Joseph A. Torregrossa, Morgan, Lewis & Bockius, Philadelphia, Pa., for appellant.

Before ALDISERT, ADAMS and HUNTER, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

This case raises questions concerning the district court's application of our holding in In re Grand Jury Proceedings, 486 F.2d 85 (3d Cir., 1973) (*Schofield I*). Because we conclude that the requirements of *Schofield I* have been met, the district court order is affirmed.[1]

### I.

In *Schofield I* this court soundly rejected any contention that the district court should "rubber stamp" petitions for the enforcement of grand jury subpoenas. Instead we held that the trial court would first be required to *satisfy itself* of the propriety of the subpoena. Under our supervisory powers we required the party seeking enforcement of a grand jury subpoena to make some minimal showing by affidavit of the existence of a proper purpose.[2] We suggested three tests for determining

---

1. United States of America v. Grand Jury Investigation Jacqueline Schofield, Witness, No. 74–197 (E.D.Pa., Nov. 15, 1974).

2. Our supervisory power over grand juries is derived from several sources. Under 18

U.S.C. § 3331 and F.R.Cr.P. 6(a) a district court is given power to call a grand jury into existence; under F.R.Cr.P. 17(a), and 28 U.S.C. § 1826(a) respectively, the district court is given the power to issue and the duty to enforce grand jury subpoenas.

whether the required showing had been made.

. . . [W]e think it reasonable that the Government be required to make some preliminary showing by affidavit that each item is at least relevant to an investigation being conducted by the grand jury and properly within its jurisdiction, and is not sought primarily for another purpose. 486 F.2d at 93.

■ Despite the fact that the burden is generally on the witness to show abuse of the grand jury process, *Schofield I* requires the government to present affidavits in *every* case irrespective of whether the witness has challenged the propriety of the subpoena. This broad rule is designed to prevent abuse of the grand jury process by requiring a *minimum* disclosure of the grand jury's purpose in every case.

■ *Schofield I* emphasizes that where the district court is not satisfied with the affidavits presented by the government, whether because the matters set forth challenge the court's credibility or because the witness has made some colorable challenge to the affidavits, the court *can* require something more.

■ The district judge is vested with considerable discretion in determining whether additional proceedings are warranted. Various avenues of inquiry are open to a court which questions the sufficiency of the affidavits, among them discovery, *in camera* inspection, additional affidavits and a hearing. If it was not made clear in *Schofield I,* we emphasize now that the decision to require additional investigation is committed to the sound discretion of the district court. In *Schofield I* we stated:

. . . the court must in deciding that request [for additional proceedings,] weigh the quite limited scope of an inquiry into abuse of the subpoena process, and the potential for delay, against any need for additional information which might cast doubt upon the accuracy of the Government's representations. 486 F.2d at 93.

We will not disturb a decision to deny additional review unless we find that the district court's "weighing" was an abuse of discretion.

Our decision in *Schofield I* was made against the backdrop of a long line of Supreme Court decisions on the subpoena enforcement powers of grand juries.[3] Despite the fact that those cases deal with constitutional power as opposed to *Schofield I's* reliance on the court's supervisory powers, we are not inclined to interpret *Schofield I* as a major deviation from the thrust of these Supreme Court decisions. Indeed, the court in *Schofield I* concludes that United States v. Dionisio, 410 U.S. 1, 12, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973) and Branzburg v. Hayes, 408 U.S. 665, 709–710, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972) "explicitly reiterating . . . the power of the district courts to control the use of grand jury subpoenas". 486 F.2d at 89.

**3.** The investigative powers of the grand jury are very broad. In United States v. Calandra, 414 U.S. 338, 343, 94 S.Ct. 613, 618, 38 L.Ed.2d 561 (1974), Justice Powell states:

The scope of the grand jury's powers reflects its special role in insuring fair and effective law enforcement. A grand jury proceeding is not an adversary hearing in which the guilt or innocence of the accused is adjudicated. Rather, it is an *ex parte* investigation to determine whether a crime has been committed and whether criminal proceedings should be instituted against any person. The grand jury's investigative power must be broad if its public responsibility is adequately to be discharged.

In *Calandra* the court held that a witness may not refuse to answer questions based on evidence derived from an illegal search and seizure. See United States v. Dionisio, 410 U.S. 1, 11–17, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973) and United States v. Mara, 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973) (the grand jury subpoena is not a seizure under the Fourth Amendment and therefore need not be reasonable as required by the Fourth Amendment); Branzburg v. Hayes, 408 U.S. 665, 687–690, 92 S.Ct. 2646, 33 L.Ed.2d 626 (a newsman may not refuse under the First Amendment to testify about materials derived from confidential sources). Kastigar v. United States, 406 U.S. 441, 443, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1973).

In bottoming its analysis in *Dionisio* and *Branzburg*, *Schofield I* makes clear that no radical departure from these cases is intended. Implicit in *Schofield I* therefore is a realization that the grand jury must be given broad investigative powers. With the Court in *Dionisio*, we conclude that any holding that would "saddle" a grand jury with minitrials would impede its investigative duty. 410 U.S. at 17, 93 S.Ct. 764. *Schofield I* clearly did not intend to impede the grand jury process by requiring hearings in every case. It merely restated a district court's authority to deal individually with the facts of each subpoena. No Supreme Court case has implied that an enforcing judge is without power to deal with a subpoena judged to be abusive or improper. Our holding in *Schofield I*, that a district court is vested with discretion to require additional proceedings, is merely an implementation of that power to deal with questions of abuse based on the facts of each subpoena.

Our holding in *Schofield I* did not require a showing of reasonableness, it did not require any determination of probable cause and it clearly did not require a hearing in every case.

■ What *Schofield I* did require, however, was a minimum showing by affidavit *in every case* that each item sought was (1) relevant to an investigation, (2) properly within the grand jury's jurisdiction, and (3) not sought primarily for another purpose.

None of the Supreme Court cases deal with the precise issue raised in *Schofield I*. Nevertheless, we feel that the three-pronged showing requirement of that case is perfectly compatible with Supreme Court decisions. It should be noted that in United States v. Mara, 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99; United States v. Dionisio, *supra* and Branzburg v. Hayes, *supra,* affidavits were supplied to the district court. The affidavit requirement was never addressed in those cases. But under our supervisory power over the grand jury and over the district court's enforcement of subpoenas, *supra* n. 2, we feel empow-

ered to specify the particular way in which relevancy and proper purpose of a grand jury investigation shall be shown in this Circuit.

## II.

The first subpoena relevant to this case was issued in April of 1973. Mrs. Schofield was directed to permit photographs, fingerprints and handwriting exemplars to be taken. She refused to comply. This court vacated the district court's order adjudging the witness in civil contempt in *Schofield I.* Upon remand, the subpoena was not renewed.

In January of 1974, Mrs. Schofield was subpoenaed to testify before the grand jury. After being granted immunity, she did in fact testify for seven hours.

The present appeal deals with a subpoena issued in July of 1974 which again directed the witness to permit photographs, fingerprints and handwriting exemplars to be taken. When Mrs. Schofield refused to comply, the United States Attorney's office moved to enforce the subpoena in the district court. Appellant filed an answer to the enforcement motion averring, among other things, that the affidavit was insufficiently detailed to determine relevancy and that the government already had in its possession a photograph and a handwritten letter. The court nevertheless denied further discovery and ordered enforcement of the subpoena. Mrs. Schofield refused to comply and was ultimately adjudged in civil contempt.

■ In a detailed opinion the district court concluded that the government affidavit in support of the enforcement motion had in fact complied with the *Schofield I* three-pronged affidavit requirement. We agree. The affidavit states:

Walter S. Batty, Jr., Assistant United States Attorney in and for the Eastern District of Pennsylvania, states as follows:

1. The January 25, 1974 Grand Jury for the Eastern District of Pennsylvania is now conducting investiga-

tions of various alleged illegal activities in the said District; said investigations involve possible violations of federal criminal statutes, including 18 U.S.C. §§ 1621 [perjury], 1623 [giving false declarations]. Jacqueline Schofield has been subpoenaed by the said Grand Jury and has been fully advised that she is a potential defendant in its investigation.

2. It is essential and necessary to the said Grand Jury investigation that Jacqueline Schofield furnish before and to the Grand Jury, or to any duly appointed agent of the said Grand Jury, exemplars of her handwriting and/or handprinting, and to permit that her photograph and fingerprints be taken. Such items will be used solely as a standard of comparison to determine whether or not the witness uttered any forged, falsely made, altered or counterfeited checks. (Appendix at 38.)

While the information supplied was scant, it was not insufficient as a matter of law. The affidavit gave the trial judge some basis for determining that the three-pronged test of *Schofield I* had been met. Considering the slender information supplied and Mrs. Schofield's allegation that the government already had the information it sought in the affidavit, the district court could have required something more of the government.[3a] We state again, however, that we will not review the trial court's refusal to grant additional inquiry except where we find the refusal to be abuse of discretion.

The government affidavits state that the grand jury was investigating violations of criminal statutes and that the witness was a potential defendant, thus clearly satisfying the requirement that the items be relevant[4] to the grand jury investigation and properly within the grand jury's jurisdiction. The last requirement of *Schofield I,* that the item not be sought for another purpose, is less clearly laid out in the affidavit but sufficiently met in the district judge's and our view. Paragraph two of the affidavit states that the material will be used solely as a standard of comparison to determine whether the witness had committed forgery. The district judge knew that the grand jury was investigating perjury and that the witness had been granted immunity from prosecution for forgery during her seven hours of grand jury testimony. A viable conclusion is that the exemplars were relevant to determine whether Mrs. Schofield perjured herself during her earlier testimony before the grand jury.

Having satisfied the minimum showing requirements of *Schofield I,* we can only disturb the failure to require more if an abuse of discretion is shown. Although Mrs. Schofield contested the need for the exemplars, alleging that the government already had copies of her photograph and handwriting, the district judge satisfactorily explained his refusal to require more. Because of the *limited* scope of inquiry into abuse of the grand jury process, the court concluded that there had been no charge of harassment or unreasonableness and that additional

---

**3a.** The district court opinion did not address the witness' claim that the government already had exemplars. The dissent would, therefore, remand for consideration of this claim on the ground that in failing to treat it, the district court failed to *exercise* its discretion. Aside from the fact that there is nothing in the record indicating that the district court did not consider this point, we cannot agree that the court's opinion *must* address each of the witness' claims. We are dealing with the narrow decision of whether or not to grant additional proceedings. To require a district court to rebut each colorable contention raised by a witness, as Judge Aldisert's

dissenting opinion does, would facilitate delay in grand jury proceedings.

**4.** We cite an appropriate definition of relevancy:

Relevancy, in the context of a Grand Jury proceeding is not a probative relevancy, for it cannot be known in advance whether the document produced will actually advance the investigation. It is rather a relevancy to the subject matter of the investigation.

In re Morgan, 377 F.Supp. 281, 285 (S.D.N.Y. 1974).

review was, therefore, unnecessary. The slight burden of compliance did not warrant further inquiry into the grand jury's reasons for requesting the information. We find no abuse of discretion and consequently hold meritless appellant's contention that additional proceedings are required in this case.

### III.

■ Since *Schofield I* has been met in all respects, the district court's order of civil contempt will be affirmed.

ADAMS, Circuit Judge (concurring):

I concur in the result reached by Judge Hunter. Because in some respects it seemed to undercut the holding by the Supreme Court in *Dionisio* and *Mara,* I had some question regarding the compatibility of *Schofield I.* However, until overruled, *Schofield I* is the law of this Circuit, and the conclusion reached by Judge Hunter is an appropriate application of it.

The affidavit here is not a model of clarity or precision, and it might have been better for the affidavit to have specifically negated an intent to harass the witness. Nevertheless it would not appear that the district court abused its discretion in ruling that the affidavit on its face provides "some preliminary showing" that each of the requested items was relevant to a properly authorized grand jury investigation, and that the requested items were not sought "primarily for some other purpose." Nor would it appear that the district judge abused his discretion in concluding that the "quite limited scope" of the inquiry and the potential for delay outweighed the witness's need for additional information in order to enable her to contest the government's need for the exemplar, fingerprints and photograph sought.

ALDISERT, Circuit Judge (dissenting).

Before treating my disagreement with the majority, which follows an extremely narrow compass, I find it necessary to discuss the precise holding of In re Grand Jury Proceedings, 486 F.2d 85 (3d Cir. 1973) (*Schofield I*), and to answer the government's attack on it in this case.

### I.

In *Schofield I* we recognized that United States v. Dionisio, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973), and United States v. Mara, 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973), "[b]oth hold that the *fourth amendment* does not require any preliminary showing for the issuance of a grand jury subpoena, either to compel testimony, or to compel production of voice or handwriting exemplars." *Schofield I, supra,* 486 F.2d at 89. (Emphasis supplied). We then carefully proceeded to delineate the distinction between an adjudication predicated on constitutional principles and one "involv[ing] the district court's supervisory power over the proper use of its process in a grand jury proceeding, the supervisory power of this court over the manner in which the district court supervises the proper use of its process, or the substantive and procedural law of civil contempt." *Ibid.*

We then set forth precise guidelines to be followed as the law *in this circuit:*

> In view of the fact that information which would justify obtaining the handwriting exemplars, fingerprints, and a mug shot, is in the Government's sole possession, we think it reasonable that the Government be required to make some preliminary showing by affidavit that [1] each item is at least relevant to an investigation being conducted by the grand jury and [2] properly within its jurisdiction, and [3] is not sought primarily for another purpose.

*Ibid.* at 93. So that there would be a complete understanding that these requirements were not constitutionally mandated, *see* United States v. Dionisio, *supra,* and United States v. Mara, *supra,* we said:

> We impose this requirement both [a] pursuant to the federal courts' supervisory power over grand juries and [b]

pursuant to our supervisory power over civil proceedings . . .. *Ibid.*

Thus, we must understand what is meant in Judge Hunter's expressions that "we are not inclined to interpret *Schofield I* as a major deviation from the thrust of [several] Supreme Court decisions" and "[i]n bottoming its analysis in *Dionisio* and *Branzburg, Schofield I* makes clear that no radical departure from these cases is intended." (p. 965). Judge Hunter is saying (1) we are not altering the *constitutional* parameters of those decisions and (2) we are reasserting district court power to control grand jury subpoenas.

As to the creation of new *procedures,* however, *Schofield I* has mandated, in Judge Hunter's phrase, "a major deviation" and a "radical departure." Under *Mara* and *Dionisio* no preliminary showing by the government is required. Under *Schofield I* "three tests for determining . . . the required showing" are mandated. (Judge Hunter's Op., p. 964). Prior to *Schofield I,* the government was not required to make a showing. Now it is. That is the "major deviation"; that is the "radical departure."

## II.

The foregoing is the precise interpretation urged by Mrs. Schofield in the present appeal. The government would contest this: "Implicit in Mrs. Schofield's argument on this appeal is the assertion that federal courts can, pursuant to their supervisory power, impose requirements on the Government which the Supreme Court has specifically ruled are not required by the Constitution. This assertion can not be supported. See, e. g., United States v. Watson, 469 F.2d 362, 364–65 (5th Cir. 1972)." (Government Brief at 4.) There is neither procedural nor substantive merit to the government's position.

Dissatisfied with *Schofield I,* the government petitioned for rehearing, alleging in substance the argument it now repeats:

2. The Court's opinion is not only without precedent but is also in direct contravention of recent opinions of the Supreme Court, including [*Dionisio*], [*Mara*] and Branzburg v. Hayes, 408 U.S. 665 [92 S.Ct. 2646, 33 L.Ed.2d 626] (1972). . . .

\* \* \* \* \* \*

3. . . . While it is true that the Supreme Court's opinions in *Mara* and *Dionisio* emphasized the constitutional issues, . . . [the Court] found that such questions could not be properly raised unless the witness were claiming some abuse of the Grand Jury process.

The petition for rehearing was denied. The government did not seek review by the United States Supreme Court. *Schofield I* is the law of this circuit.

It was expected that the decision be respected by all—including that department of the Executive Branch of the federal government charged with the enforcement of both statutes and case law in this circuit. I do not deem it procedurally proper for the government to relitigate the holding of *Schofield I.* However, such "a second bite" is exactly what the government attempts here, albeit through the transparent device of asserting that the holding of *Schofield I* was ambiguous and that appellant's contention, which I have characterized as a precise interpretation, is unwarranted. Nevertheless, I would meet the government's substantive attack.

Present reliance on United States v. Watson, *supra,* is misplaced. There the Fifth Circuit held that the government need prove "knowing, intelligent and voluntary" waiver of a defendant's constitutional rights during police interrogation only by a preponderance of evidence, not beyond a reasonable doubt. Analogizing to Lego v. Twomey, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972), which held that in order to establish the admissibility of a confession the prosecution was constitutionally required to show voluntariness only by a preponderance of the evidence, the court made reference to a *Lego* footnote. This footnote must not be considered *in vacuo*; it must be related to the text. The text

states: "But we are unconvinced that merely emphasizing the importance of the values served by exclusionary rules is itself sufficient demonstration that the Constitution also requires admissibility to be proved beyond a reasonable doubt." *Ibid.* at 488, 92 S.Ct. at 626. The Supreme Court decided to go further, and rejected the argument that it mandate a higher burden of proof in the exercise of the Supreme Court's supervisory power. By footnote the Supreme Court stated:

It is no more persuasive to impose the stricter standard of proof as an exercise of supervisory power than as a constitutional rule. Cf. Ralph v. Warden [438 F.2d 786 (4th Cir. 1970)], clarifying United States v. Inman [352 F.2d 954 (4th Cir. 1965)]; Pea v. United States [130 U.S.App.D.C. 66, 397 F.2d 627 (1967)]. *Ibid.* n.16.

In *Watson* the Fifth Circuit suggested that where the Supreme Court had declined to adopt a higher burden of proof in the exercise of *its* supervisory power, the inferior federal courts could not, on the same or related subject matter, impose a higher burden of proof in the exercise of the *Court of Appeals'* supervisory power. As I have already noted, *supra* p. 968, the Supreme Court opinions in *Dionisio, supra,* and *Mara, supra,* were confined to the constitutional issue; they did not address the question whether the Court, in the exercise of *its* supervisory power, would require a preliminary showing for the enforcement of a grand jury subpoena. In the absence of this second step, I would have no necessity to accept or reject the Fifth Circuit's interpretation. Suffice it to say, I would not read *Lego* or *Watson* to suggest that a federal court may not impose, upon the government, requirements not mandated by "constitutional rule." Neither have I been directed to, nor has my independent research disclosed, a Supreme Court holding that would foreclose such a court-imposed rule of law. Therefore, I would reject the government's substantive attack.

Deciding a case in the exercise of a court's supervisory power means little more than ruling on a basis not specifically set forth in the Constitution, or by statute, procedural rule, or precedent. Although generally associated with the imposition of procedural safeguards for proper judicial administration, exercise of the supervisory power of the Supreme Court or of the Court of Appeals is but a legitimate function of a court's law-making role. Whatever had been the ancient debate over the power of a court to make, as well as interpret, law suggested in Swift v. Tyson, 41 U.S. (16 Pet.) 1, 10 L.Ed. 865 (1842), that old saw has been laid aside for decades. As recently as Illinois v. City of Milwaukee, 406 U.S. 91, 99, 92 S.Ct. 1385, 1390, 31 L.Ed.2d 712 (1972), the Court has emphasized:

"[F]ederal courts have an extensive responsibility of fashioning rules of substantive law . . . . These rules are as fully 'laws' of the United States as if they had been enacted by Congress."

In the context of federal courts, the expression "exercise of its supervisory authority" had its genesis in McNabb v. United States, 318 U.S. 332, 340–341, 63 S.Ct. 608, 613, 87 L.Ed. 819 (1943), wherein Mr. Justice Frankfurter explained that in the review of direct criminal appeals, the Supreme Court was not limited to a consideration of constitutional rules:

For, while the power of this Court to undo convictions in state courts is limited to the enforcement of those "fundamental principles of liberty and justice," Hebert v. Louisiana, 272 U.S. 312, 316 [, 47 S.Ct. 103, 104, 71 L.Ed. 270], which are secured by the Fourteenth Amendment, the scope of our reviewing power over convictions brought here from the federal courts is not confined to ascertainment of Constitutional validity. Judicial supervision of the administration of criminal justice in the federal courts implies the duty of establishing and maintaining civilized standards of procedure and evidence. . . .

The principles governing the admissibility of evidence in federal criminal

trials have not been restricted . . to those derived solely from the Constitution. In the exercise of its supervisory authority over the administration of criminal justice in the federal courts, see Nardone v. United States, 308 U.S. 338, 341–342, 60 S.Ct. 266, 267, 268, 84 L.Ed. 307, this Court has, from the very beginning of its history, formulated rules of evidence to be applied in federal criminal prosecutions. . . . And in formulating such rules of evidence for federal criminal trials the Court has been guided by considerations of justice not limited to the strict canons of evidentiary relevance.

Three years later the Court was to say in Fay v. New York, 332 U.S. 261, 287, 67 S.Ct. 1613, 1627, 91 L.Ed. 2043 (1947):

> Over federal proceedings we may exert a supervisory power with greater freedom to reflect our notions of good policy than we may constitutionally exert over proceedings in state courts, and these expressions of policy are not necessarily embodied in the concept of due process.

In La Buy v. Howes Leather Co., 352 U.S. 249, 259–260, 77 S.Ct. 309, 315, 1 L.Ed.2d 290 (1957), Mr. Justice Clark stated flatly:

> We believe that supervisory control of the District Courts by the Courts of Appeals is necessary to proper judicial administration in the federal system.

Bartone v. United States, 375 U.S. 52, 54, 84 S.Ct. 21, 23, 11 L.Ed.2d 11 (1963) (per curiam), emphasized that "the Courts of Appeals and this Court (McNabb v. United States, 318 U.S. 332 [63 S.Ct. 608, 87 L.Ed. 819],) have broad powers of supervision" over federal proceedings.

The Court of Appeals for the Third Circuit has not been hesitant in expressing what would best further the administration of criminal justice in the exercise of our supervisory authority. And in each case we imposed requirements not mandated by Constitutional rule. United States v. Schiavo, 504 F.2d 1, 7 (3d Cir. 1974) (in banc), cert. denied sub nom., Ditter v. Philadelphia Newspapers, Inc., —— U.S. ——, 95 S.Ct. 690, 42 L.Ed.2d 688 (1974); United States v. Crutchley, 502 F.2d 1195, 1200 (3d Cir. 1974); United States v. Barber, 442 F.2d 517 (3d Cir.), cert. denied, 404 U.S. 958, 92 S.Ct. 327, 30 L.Ed.2d 275 (1971); Government of Virgin Islands v. Bodle, 427 F.2d 532, 534 (3d Cir. 1970); United States v. Fioravanti, 412 F.2d 407, 419–420 (3d Cir.), cert. denied sub nom., Panaccione v. United States, 396 U.S. 837, 90 S.Ct. 97, 24 L.Ed.2d 88 (1969); Government of Virgin Islands v. Lovell, 378 F.2d 799, 805 (3d Cir. 1967); cf. United States ex rel. Sturdivant v. New Jersey, 289 F.2d 846, 848 (3d Cir.), cert. denied, 368 U.S. 864, 82 S.Ct. 109, 7 L.Ed.2d 61 (1961). For an anthology of cases relating to the supervisory power of federal courts of appeals see Burton v. United States, 483 F.2d 1182, 1187–1188 (9th Cir. 1973), quoted at length in United States v. Bailey, 480 F.2d 518, 520 (5th Cir. 1973) (Goldberg, J., concurring and dissenting).

While Judge Weis and I have expressed concern about promulgating procedures that possess retrospective force and effect in the exercise of our supervisory power, see United States v. Schiavo, supra, dissenting opinion, no such considerations are present in the instant appeal; the happenings which gave rise to this appeal took place following the effective date of Schofield I. I now turn to these.

### III.

The first subpoena, at issue in Schofield I, was issued in April, 1973, and directed Mrs. Schofield to present herself for photographs, fingerprinting and handwriting or handprinting exemplars. After our court's decision became final, there was no government effort to enforce the initial subpoena. A second subpoena was issued in January, 1974, requesting that she testify before the

grand jury. She did so under a grant of immunity. A third subpoena was issued in July, 1974, again seeking handwriting or handprinting exemplars, photographs, and fingerprints. Appellant filed a motion to quash on the ground that there was no supporting affidavit as required by *Schofield I.* On July 22 the district court denied this motion, finding that no advance request was made of the appellant to produce the materials. Such a request did follow on July 30; the next day a purported affidavit was submitted. This "affidavit" was not sworn to.

On August 28, appellant filed an answer to the government's motion to enforce, averring that the government had in its possession both a photograph and a handwriting exemplar. She later moved for additional discovery into the government's claim of relevance and necessity. On October 16, the district court denied both motions; denying the government's motion without prejudice.

On October 29, a revised, sworn-to affidavit was filed. On November 1, the district court ordered appellant to appear before the grand jury on November 12; on November 13, after she refused to comply, a show cause order issued and, following a hearing on that order November 15, the district court held her in civil contempt. This appeal followed; appellant has been released on bail.

Reviewing these detailed proceedings and the opinion of the district court, I am persuaded that the government met two of the three requirements of *Schofield I.* By affidavit, the government reported that the grand jury was investigating "possible violations of federal criminal statutes, including 18 U.S.C. §§ 1621, 1623 [Perjury and False Swearing before a Grand Jury]. Jacqueline Schofield has been subpoenaed by the said Grand Jury and has been fully advised that she is a potential defendant in its investigation." Thus, the government demonstrated: (1) the items are relevant to a grand jury investigation

and (2) the investigation was properly within the grand jury's jurisdiction.

The government further averred that the items "will be used solely as a standard of comparison to determine whether or not the witness uttered any forged, falsely made, altered or counterfeited checks." It was on this averment that the district court reasoned that the third requirement of *Schofield I* was met: "Thus, the affidavit affirmatively shows that the material 'is not sought primarily for another purpose.'"

Judge Hunter describes the court's action as a proper exercise of discretion, and would affirm. My difficulty is not in evaluating an exercise of discretion. My problem is more fundamental. I find no exercise of discretion in the most crucial aspect of the proceedings before the district court. There is not one word in the district court's opinion indicating that it treated appellant's specific contentions that the government was in possession of both her photograph and her handwriting in the form of a letter. Paragraphs 2(d) and (e) of Answer of Jacqueline Schofield, Witness, to Motion to Enforce Grand Jury Subpoena. These averments required the district court to proceed as more particularly set forth in *Schofield I:*

> If after such disclosure [of the affidavit] the witness makes application to the district court for additional discovery in the enforcement proceeding the court must in deciding that request weigh the quite limited scope of an inquiry into abuse of the subpoena process, and the potential for delay, against any need for additional information which might cast doubt upon the accuracy of the Government's representations.

486 F.2d at 93. Because this was neither pursued nor adjudicated, I would require the district court to exercise its discretion. I would vacate the judgment of civil contempt and remand the proceedings for this limited purpose.